**UNITED STATES of America**
v.
**Arthur Lee HECHT.**
**Crim. No. 66–34.**

United States District Court
W. D. Pennsylvania.

Oct. 11, 1966.

Gustave Diamond, U. S. Atty., by Sebastian Pugliese, Asst. U. S. Atty., for the United States.

Melvin Schwartz, Pittsburgh, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

The defendant, a dentist, seeks to suppress as evidence: (1) certain counterfeit money taken from his automobile at the time of his arrest and (2) certain counterfeit money taken at his home after the arrest.

As to (2) it seems clear that this was obtained pursuant to defendant's consent, and is therefore lawful. This is true notwithstanding the fact that such consent was recorded in language written by a secret service agent on an old envelope who described the document as a "consent search warrant", somewhat of an innovation in legal terminology; and notwithstanding the fact that defendant and the agent fabricated a fictitious ground for the visit to Dr. Hecht's home so as not to alarm his wife.

The written consent simply corroborated and embodied defendant's contem-

poraneous oral consent, freely and intelligently given. It also superseded and renders moot any questions that might otherwise arise under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (decided June 13, 1966) and Johnson v. State of N. J., 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (decided June 20, 1966).

By way of dictum, to resolve all issues presented by counsel, we believe ·and accept the agents' testimony (contradicted by defendant) that he was given the then customary warnings and that it was not until after he reflected on the matter for a time that he voluntarily and intelligently waived his constitutional rights and told the agents that he had additional counterfeit money at his home. The arrest was made on November 10, 1965, before *Miranda*. Agent Stewart admits that the warning did not include the information that if defendant were indigent an attorney would be made available at government expense under the Criminal Justice Act.

This candid admission by the agent simply makes his testimony more credible. We agree with the agent that it would be a counsel of supererogation to make such a charitable offer in the case of a professional man (dentist's earnings are commonly understood to exceed those of lawyers, though less than those of an M.D.), and that omission to do so would be harmless error even if *Miranda* applied.

We believe also that the rationale of *Johnson* excludes retroactive application of *Miranda;* certainly where, as here, the question is not one of the admissibility as evidence of the statements made by defendant under the circumstances involved, but simply whether knowledge gained by the arresting agent may properly be used as the stimulus to further investigation, effected by means of defendant's voluntary cooperation.

As to (1), the lawfulness depends on whether the agents making the arrest did so on probable cause.

It seems plain that they did have probable cause in fact, and also in law, if what they learned through overhearing defendant's conversation with a confederate Low by means of an electronic transmitter be includible as a legitimate part of their knowledge. We think use of this device lawful. There was no illegal "wire-tapping" by the agents. "Wire-tapping is prohibited by the force of a federal statute and not on constitutional grounds. The statute is not violated * * * by use of a transmitting device 'planted' where it will broadcast conversation in its vicinity", where there is no trespass *quare clausum fregit*. Dumbauld, The Bill of Rights and What It Means Today (1957) 75–76 and cases there cited; and the subsequent leading case of Lopez v. United States, 373 U.S. 427, 437, 440 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

But we are satisfied that even without such electronically acquired knowledge the arresting officers had sufficient knowledge to amount to probable cause.

It is true that defendant's confederate Low had not theretofore been a trustworthy informer, but was acting for the first time in that capacity. In fact, the agents were somewhat skeptical of Low's story implicating defendant, a professional man of standing in the community, as a member of a counterfeiting ring, and sought corroboration. This corroboration they secured, we are convinced, by the circumstantial evidence afforded by the delivery to defendant of the intercepted shipment of counterfeit money.

The convincing quality of this circumstantial evidence is not affected by the fact that the delivery of the counterfeit money to defendant by Low was delayed by Low's earlier arrest,[1] or by the

---

1. The activities of the counterfeiting ring which included Low and defendant, and the circumstances surrounding Low's arrest are fully described in the able opinion of Judge Marsh filed August 11, 1966 at 257 F.Supp. 606, 608–609 (W.D.Pa.1966).

retention by the Secret Service of the counterfeit money in the office safe until a meeting could be arranged by Low with defendant, or by the fact that the agents intended to arrest the defendant before he could leave the scene after the delivery of the counterfeit money to him.

 We therefore hold that there was probable cause for defendant's arrest, even without the electronic evidence. Hence the search and seizure, incident to the arrest and at the site thereof, was lawful.

The main thrust of defendant's motion to suppress and the arguments advanced orally and in brief in support thereof, are directed against the use of the seized counterfeit money as evidence, and against the use of the information obtained by electronic devices. For the reasons stated above, we are persuaded that these arguments are without merit.

The motion also mentions, and seeks suppression of, "Any statements that he [defendant] made at and after the time of his arrest."

So far as the testimony and proceedings before us show, the only such statements involved are those that directed the officers to the additional counterfeit money "stashed" at defendant's home. It does not appear that any general confession or statement was made or will be offered at the trial. From the nature of the circumstances of defendant's arrest, it would seem that the Government would undertake to prove its case by the testimony of the agents, plus the counterfeit money itself, rather than by the use of any testimonial assertions emanating from the defendant at or shortly after his arrest.

If any such assertions are offered at the trial as substantive evidence of guilt rather than as evidence relating to the discovery and custody of exhibits, our decision in the instant proceeding will not of course preclude the trial judge from passing independently upon the admissibility of such testimony.

ORDER

AND NOW, this 11th day of October, 1966, upon consideration of defendant's motion to suppress evidence, after hearing and argument,

It is ordered that said motion be and the same hereby is denied.