STATE of North Dakota, Plaintiff
and Appellee,

v.

Leonard J. AZURE, Defendant
and Appellant.

Cr. No. 540.

Supreme Court of North Dakota.

June 11, 1976.

Arne F. Boyum, Jr., State's Atty., Rolla, for plaintiff and appellee State of North Dakota.

Bruce E. Bohlman, Grand Forks, for defendant and appellant; argued by David E. Boeck, Grand Forks.

VOGEL, Justice.

Leonard J. Azure was convicted of the crime of first-degree robbery by a jury, and he appeals. We previously heard and denied his motion for release pending this appeal. *State v. Azure*, 241 N.W.2d 699 (N.D.1976). The attorneys representing Azure on appeal did not represent him at the trial.

Josephine Landry, carrying more than $1,200 in currency in her purse, was accosted on a sidewalk in Rolla. Her assailant came from a car, driven by another person, which stopped nearby. While the driver remained in the vehicle, the passenger struck Josephine Landry. She fell to the ground and he seized her purse containing

the money, jumped in the car, and was driven away. This happened at approximately 7:15 a. m. on February 14, 1975. Josephine Landry could not identify the driver of the vehicle, but did identify the person who struck her as David LaFromboise. The State claims that the driver was the appellant Azure.

LaFromboise was separately charged with the crime of robbery and is not involved in this appeal.

The State's case depends in large part upon circumstantial evidence of Azure's identity. This evidence consists of testimony of witnesses who saw him in the company of LaFromboise in an automobile shortly before and after the robbery, and testimony of Landry as to similarities in the clothing worn by the driver of the robbery vehicle and the clothing worn by Azure when the prior and subsequent identifications were made.

Ahmed Ferris, who operates a store and gas station at Rolla, testified that David LaFromboise and Leonard J. Azure, both of whom were known to him, appeared at his place of business in an automobile and bought gas for cash and charged a quart of oil shortly prior to 6:50 a. m. on the day of the robbery. When they asked to buy cigarettes on credit, Ferris refused. When they persisted, he called the sheriff at 6:50 a. m. They then drove away and Ferris called the sheriff to advise him that he need not come.

Tim Hanson, who worked at a Super Valu store in Rolla, testified that two men, one of whom was LaFromboise, who had been ejected from the store the previous day after entering through the back door, came to the back door of the store where he was working at a little after 7 a. m., and asked for a cigarette. He did not recognize Azure, whom he had not seen before, but described the LaFromboise companion as wearing a brown coat or leather vest and black hat with a band around the brim. Josephine Landry testified that the driver of the car used in the robbery was wearing a dark jacket and dark hat with a brim.

Immediately after the robbery, Josephine Landry went to a local bakery, the proprietor of which called the sheriff at 7:20 a. m. to advise him of the commission of the crime.

At about 9 a. m., the sheriff saw David LaFromboise and Leonard J. Azure in a car about six miles from the scene. He stopped them and they were arrested by local authorities. At that time, Azure was wearing a brown or black hat and a dark jacket, according to the sheriff.

The defendant's principal attack upon the evidence against him arises from the testimony of Tim Hanson, who identified Azure at the trial as one of the persons in the car he saw behind the Super Valu store. Azure points out that Hanson testified he had not known Azure before that time, that he identified Azure at the trial, and that he stated on cross-examination that he was contacted by the police the morning of the robbery and that they showed him pictures of LaFromboise and Azure and he identified them as the persons he had seen. From this testimony, all of which went into evidence without any objection, the defendant argues that the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification so as to deny due process. Admitting that no objection was made, he argues that due-process rights cannot be waived, and that the error was so "obvious" that the court should reverse under the provisions of Rule 52(b), North Dakota Rules of Criminal Procedure, as to obvious error [called "plain error" in Rule 52(b), Federal Rules of Criminal Procedure].

The identification of Azure by Hanson on direct examination was positive. On cross-examination it was brought out that he was previously unacquainted with Azure and identified him for the sheriff from a single photograph shown him within a few hours after the offense. There is no suggestion or inference in either direct or cross-examination to the effect that the identification at trial was based in any degree upon the use of the photograph. The officer who showed the photographs to Hanson was not questioned as to the use of the photographs,

the photographs were neither produced nor requested at the trial, and there was no evidentiary hearing requested for the purpose of showing that the in-court identification was based on the use of the photographs.

Furthermore, the circumstantial evidence identifying Azure as one of the two participants in the robbery, even excluding the testimony of Hanson, is very strong. Ferris positively identified both Azure and La-Fromboise as customers at his station a few minutes before 7 a. m.; the robbery occurred shortly after 7 a. m. within a short distance of the place where Ferris identified them. About an hour and a half after the robbery, the two were still together in an automobile and were positively identified by the sheriff. Further, the description of the clothing worn by the driver of the vehicle used in the robbery matches quite well with the description of the clothing worn by Azure as described by the persons who positively identified him before and after the offense.

## LAW AND DECISION

■ Courts generally recognize that there is a danger of misidentification where victims or other witnesses are asked whether a single person exhibited to them is the wrongdoer being sought, or where a single photograph is exhibited to them for the same purpose. However, courts generally also recognize that single-photograph identifications are sometimes necessary, and therefore no absolute rule forbidding such identifications has been adopted. Each case is decided on its own facts. In *Simmons v. United States*, 390 U.S. 377, 383, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968), the Supreme Court of the United States said:

"Even if the police . . . follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, . . . ."

In the same case, the court noted that it was necessary to balance the necessities in each case against the dangers of misidentification, and held that

". . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 88 S.Ct. 967, at 971.

In *Simmons*, as in most of the cases cited by the appellant here, the courts have sustained convictions involving the use of single-photograph identification. Such cases include *Israel v. Odom*, 521 F.2d 1370 (7th Cir. 1975); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); and *State v. Watts*, 296 Minn. 354, 208 N.W.2d 748 (1973).

In other cases the courts have reversed. *United States v. Workman*, 470 F.2d 151 (4th Cir. 1972); *United States v. Fowler*, 439 F.2d 133 (9th Cir. 1971); *Kimbrough v. Cox*, 444 F.2d 8 (4th Cir. 1971).

We find no cases in our own jurisdiction on this point.

We agree generally that single-photograph identifications should be avoided, since they are unduly suggestive and ordinarily can be eliminated at slight inconvenience. Most police departments have a collection of individual photographs from which a selection can be made to be used as a photographic "lineup." A witness can be asked whether the person being sought is one of those portrayed. Such a procedure is much less suggestive than a procedure involving a single photograph.

However, there may be circumstances where single-photograph identification is necessary. An officer may not have access to multiple photographs. It may be necessary to make the identification in the field,

or in a hospital where the victim is in critical condition. Single photographs may also be used during the investigative process to eliminate suspects, as when a witness can positively state that the person portrayed is not the perpetrator of the crime. These examples illustrate the wisdom of the flexible approach described in *Simmons, supra.*

■ A comparison of the circumstances of the case before us with those cited above leads us to the conclusion that no error was committed in the case before us. In fact, the likelihood of error in the case before us is considerably less than that in some of the cases cited above where convictions were affirmed. For example, in *Neil v. Biggers, supra*, the identification through the single photograph was made by the victim seven months after the offense was committed. Here, the identification by Hanson was made within a few hours after the robbery.

On the other hand, the present case exhibits much less suggestiveness than was present in those cases where the Federal courts have reversed convictions based upon single-photograph identifications. For example, in *United States v. Workman, supra*, the in-court identification was based solely upon the out-of-court photographic identification. In *Kimbrough v. Cox, supra*, the Court of Appeals held that the pretrial identification procedure was unnecessarily suggestive where the photographic identification was the only evidence of identification, the identification was made two weeks after the robbery, there was nothing to connect the defendant with the case until his vindictive ex-wife accused him, and the photographs were used to refresh the recollection of the witness minutes before the in-court identification was made. Similarly, in *United States v. Fowler, supra*, the single photographs were used in court to fortify the in-court identification.

The case before us differs greatly from these cases, since the in-court identification by Hanson was unequivocal, there is no indication that it was based upon the out-of-court photographic identification, the photographic identification was made on the same day as the robbery occurred, and Hanson had no motive to falsify.

We also give some weight to the fact that the defendant was positively identified by others as being in the vicinity of the crime at about the time it occurred, and the attack on the photographic identification applies only to the testimony of one witness, Hanson. In *State v. Watts, supra*, the Minnesota court attached considerable importance to the fact that positive identifications were made by several witnesses who had not made prior photographic identifications.

We conclude, as the United States Supreme Court did in *Coleman v. Alabama, supra*, a case where a victim identified the defendant before the police completed a lineup, that the evidence supports a finding that the in-court identification of Azure was "entirely based upon observations at the time of the assault and not at all induced by the conduct of the lineup." 90 S.Ct. 1999, at 2001. We therefore affirm the conviction.

However, we believe this opinion makes clear our disapprobation of unnecessary single-photograph identifications. Lineups or multiple-photograph presentations are preferable. But we adhere to the *Simmons* rule that each case must be considered on its own facts, and convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. We find no indication in this case of such impermissible suggestiveness. The bare fact that a witness saw a single photograph of the defendant and identified him does not, by itself, indicate that the identification in court was based upon the photographic identification. Here, there was no objection to the identification in court; the cross-examination of Hanson did not go into the basis for his identification in court; the officer who showed him the photographs was not interrogated on the subject and the photographs were not called for; and no

evidentiary hearing on the subject was requested. We decline to overrule a conviction on such a thin suggestion of possible prejudice as we have here.

Since we find no error, we likewise find no "obvious error" justifying our interposition under Rule 52(b), N.D.R.Crim.P. Nor can we find, as Azure urges us to find, that the evidence would be insufficient to sustain the verdict without the testimony of Hanson. Of course, we have found that Hanson's testimony is admissible and proper, but even without it the evidence would be sufficient, in our opinion.

Azure also asserts error in the trial court's denial of his motion for a new trial based on a claim of newly discovered evidence. That evidence consists of statements made by Josephine Landry at the trial of David LaFromboise wherein she stated at one point that her statement upon viewing the photograph of LaFromboise was that he "could have been the fellow." However, as the trial court pointed out, her testimony at the LaFromboise trial was a positive identification of LaFromboise and not inconsistent with her testimony at the trial of the present case. We have examined the transcript in the LaFromboise case, now on appeal in this court, and we agree with the trial court.

We conclude that Azure had a fair trial. In fact, the trial court gave him the benefit of the doubt in suppressing evidence as to the finding of money in the back seat of the car in which he and LaFromboise were arrested, even though no pretrial suppression order had been made, and the evidence might very well have been admitted.

We find no error, and we affirm.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.