**STATE of North Dakota, Plaintiff and Appellee,**

v.

**David W. LaFROMBOISE, Defendant and Appellant.**

Crim. No. 531.

Supreme Court of North Dakota.

Oct. 20, 1976.

David E. Boeck, Grand Forks, and Senior Law Student Ralph Vinje, for appellant.

Arne F. Boyum, State's Atty., Rolla, for appellee.

PAULSON, Acting Chief Justice (on reassignment).

David W. LaFromboise was convicted of the crime of first degree robbery by a jury, and he appeals. The attorney representing LaFromboise on appeal did not represent him at trial.

Two issues are raised on this appeal: (1) was the photographic identification procedure employed by the authorities so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification so as to deny due process? and (2) was the defendant's representation at trial of such a nature as to constitute a violation of his Sixth Amendment right to effective assistance of counsel?

We previously considered the appeal of Leonard J. Azure who was separately charged with the crime of robbery arising from the same incident, but who is not involved in this appeal. *State v. Azure,* 243 N.W.2d 363 (N.D.1976).

Josephine Landry, carrying more than $1,200 in currency in her purse, was accosted on a sidewalk in Rolla. Her assailant jumped out of a car, driven by another person, which stopped nearby. While the driver remained in the vehicle, the passenger struck Miss Landry. She fell to the sidewalk and he seized her purse containing the money, jumped into the car, and was driven away. This occurred at approximately 7:15 a. m. on February 14, 1975. Miss Landry could not identify the driver of the vehicle, but did identify the person who struck her as LaFromboise.

As in *Azure, supra,* the State's case depends in part upon circumstantial evidence

of LaFromboise's identity. This evidence consists of testimony of witnesses who saw LaFromboise in the company of Azure in an automobile shortly before and after the robbery, and testimony of Miss Landry as to LaFromboise's identity as her assailant.

Ahmed Ferris, who operates a store and gasoline station in Rolla, testified that David LaFromboise and Leonard J. Azure, both of whom were known to him, appeared at his place of business in an automobile, shortly prior to 6:50 a. m. on the day of the robbery, and LaFromboise bought gasoline for cash and Azure charged a quart of oil. When they asked to buy cigarettes on credit, Ferris refused. When they persisted, Ferris called the Rolla chief of police at 6:50 a. m., for assistance and, a short time later, Ferris called the chief of police a second time, to advise him that he need not come because Azure and LaFromboise had driven away.

Tim Hanson, who was employed at the Super Valu store in Rolla, testified that two men (Hanson identified one of the men as LaFromboise who had been ejected from the store the previous day by the store manager) came to the back door of the store where he was working at a little after 7 a. m. on the day of the robbery and asked him for cigarettes.

Miss Landry, immediately after the robbery, entered a local bakery and requested the proprietor to call the sheriff, at approximately 7:20 a. m., to advise him of the commission of the crime.

At about 9 a. m., the sheriff saw LaFromboise and Azure in a car about six miles from the scene of the robbery. He stopped them and they were arrested by local authorities.

LaFromboise's principal attack upon the evidence adduced at the trial arises from the testimony of Tim Hanson, who identified LaFromboise at the trial as one of the persons in the car he saw behind the Super Valu store on the morning of the robbery; and the testimony of Miss Landry, who identified LaFromboise as her assailant. LaFromboise asserts that Hanson, who had met LaFromboise only once before that

time, and Miss Landry, who had never known LaFromboise before that time, had both stated on cross-examination that each was contacted by the authorities on the day of the robbery and were shown pictures of Azure and LaFromboise and asked to identify them as the men they had seen. From this testimony, all of which was introduced in evidence without objection, LaFromboise argues that the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification so as to deny due process to LaFromboise. LaFromboise, while admitting that no objection was made, argues that due process rights cannot be waived, and that the error was so "obvious" that the court should reverse under the provisions of Rule 52(b), North Dakota Rules of Criminal Procedure, as to obvious error [called "plain error" in Rule 52(b), Federal Rules of Criminal Procedure].

The identification of LaFromboise by Hanson, on direct examination, was positive. On cross-examination, it was adduced that Hanson had identified LaFromboise for the sheriff from a single photograph shown Hanson within a few hours after the commission of the offense. There is neither a suggestion nor an implication on either direct examination or cross-examination to the effect that the identification at trial was based in any degree upon the use of the photograph, but, to the contrary, the evidence reveals that Hanson made his identification of LaFromboise based upon Hanson's personal observations of LaFromboise at the Super Valu store both on the day before and on the morning of the robbery. The officer who showed the photograph of LaFromboise to Hanson was not questioned as to the use of the photograph, but Hanson testified on cross-examination that the officer made no statements as to LaFromboise's identity when the photograph was being shown. The photograph of LaFromboise was neither produced nor requested at the trial, and there was no evidentiary hearing requested by LaFromboise for the purpose of showing that the in-court identification was based on the use of the photograph.

The identification of LaFromboise by Miss Landry on direct examination was positive. On cross-examination it was brought out that Miss Landry was previously unacquainted with LaFromboise and she identified him for the sheriff from a single photograph shown her (the time of showing is uncertain from the trial transcript, but it is certain that the sheriff tried to show her the picture while she was still on the X-ray table in the hospital and that the chief of police, Walter L. White, showed the photograph to her sometime later). On viewing the photograph, Miss Landry testified that she thought the picture could have been a photograph of her assailant. Miss Landry testified that she did not positively identify LaFromboise until she saw him in a police lineup, a positive identification she was able to repeat again at trial on direct examination, cross-examination, and re-direct examination. Miss Landry also testified on cross-examination that the officers made no statements as to LaFromboise's identification while his photograph was being shown to her. Again, the photograph was neither produced nor requested at the trial, and there was no evidentiary hearing requested for the purpose of showing that the in-court identification was based solely on the use of the photograph.

Furthermore, the circumstantial evidence identifying LaFromboise as one of the two participants in the robbery, even excluding the testimony of Hanson and Miss Landry, is very strong. Ferris positively identified both Azure and LaFromboise as having been customers at his gas station a few minutes before 7 a. m. on the day of the robbery, and the robbery occurred shortly after 7 a. m., within a short distance of Ferris's gas station. About an hour and a half after the robbery, Azure and LaFromboise were still together in an automobile and were positively identified by the sheriff.

## I. PHOTOGRAPHIC IDENTIFICATION PROCEDURE

LaFromboise urges that the facts in this case are distinguishable from those facts forming the basis of our decision in *Azure, supra.* LaFromboise contends that the photographs were not used on the same day as the robbery, February 14, 1975, as set out in *Azure, supra,* but, rather, that the photographs were used some time on or after February 20, 1975, the date LaFromboise alleges that the photographs were taken. LaFromboise bases this assertion solely on the testimony of the Rolla chief of police, Walter L. White. Police Chief White testified that he had photographed LaFromboise on February 20, 1975.

We reject LaFromboise's argument. There is nothing in the record to suggest that the February 20 photograph taken by Police Chief White was ever shown to either Tim Hanson or Miss Landry; but, to the contrary, the testimony of both Tim Hanson and Miss Landry indicate that they were shown a photograph of LaFromboise on February 14, 1975. Miss Landry testified that the sheriff tried to show her a photograph of her alleged assailant while she was still on the X-ray table in the hospital; and Tim Hanson testified that he was shown the photograph on the same day the robbery occurred. We find no merit in LaFromboise's contention that the photograph of LaFromboise used in the instant case was employed any differently than was the photograph of Azure, in *Azure, supra.*

In our recent decision in *Azure, supra,* this court in reviewing the status of the law with respect to the use of single-photograph identification of suspects, in paragraphs 1 and 2 of the syllabus, held:

"1. The use of single photographs for identification of suspects is undesirable. Lineups or multiple photographs are to be preferred. But single-photograph identifications are not per se impermissibly suggestive under all circumstances.

"2. Mere use of a single photograph by one witness for identification, unaccompanied by proof that the identification was based on the photograph only and not on observation of the defendant at the time of the crime, and not objected to at the trial, is an insufficient basis to

justify reversal of a conviction based on such evidence as well as other identification which is not related to the use of photographic identification."

For the same reasons stated in *Azure, supra* 243 N.W.2d at 365–367, we find no error and thus no "obvious error" in the photographic identification procedure used in the instant case as it relates to the testimony of Tim Hanson. Nor do we find any "obvious error" justifying our interposition under Rule 52(b), N.D.R.Crim.P., on the probability that Miss Landry was shown the LaFromboise photograph a few days after the robbery, because her testimony fully discloses the effect the photograph had on her identification of LaFromboise for the jury to evaluate, and, in our opinion, the evidence without her own identification of LaFromboise would be sufficient to support the verdict.

## II. COMPETENCY OF COUNSEL

LaFromboise next contends that his counsel's representation at trial was of such a nature as to constitute a violation of LaFromboise's Sixth Amendment right to effective assistance of counsel. He bases his contention on two alleged deficiencies in his counsel's representation. First, LaFromboise alleges that his counsel informed the jury, at a time when his counsel either knew or should have known that LaFromboise was not going to testify in his own behalf, that LaFromboise was a convicted felon who had been previously imprisoned. Second, LaFromboise alleges that his counsel failed to render reasonably effective assistance by failing to object to the in-court identification of LaFromboise by Tim Hanson and Miss Landry.

 This court has on numerous occasions been requested to evaluate the competency of defense counsel in criminal cases. *State v. Metzner,* 244 N.W.2d 215, 225–226 (N.D.1976), and cases cited. In *Metzner, supra,* in paragraphs 6 and 7 of the syllabus, we held:

"6. The right to counsel guaranteed by the Sixth Amendment to the United States Constitution does not mean error-less counsel nor counsel judged ineffective by hindsight, but counsel reasonably likely to render, and rendering, reasonably effective assistance.

"7. Counsel is presumed to be competent and adequate and the burden of proof to show inadequacy or incompetency of counsel lies upon the defendant."

LaFromboise's first contention is without merit. It must be pointed out that because the voir dire examination of prospective jurors was not reduced to writing, we have no such written record before us, and what LaFromboise told his defense counsel prior to trial and what his defense counsel's trial strategy was during the voir dire examination is left entirely to conjecture. We will, for the purposes of this appeal, assume the facts to be as asserted by LaFromboise.

In many cases, it is effective trial strategy to precondition jurors to any potentially negative aspects of a defendant's case at the earliest and least prejudicial time of a trial—and during the voir dire examination of the jury is an ideal time to do so because it permits a party to remove jurors who are found to be prejudiced by such information in the event it should happen to be revealed in the course of a trial. In the instant case, it was a distinct probability that developing trial strategy might have made it desirable for the defendant to take the witness stand in his own behalf—whether or not such action was contemplated at the trial's inception. Although it might have been better practice for LaFromboise's counsel to have interjected LaFromboise's prior criminal record into hypothetical questions directed to the prospective jurors, we cannot say that LaFromboise's counsel, by specifically informing the jury of LaFromboise's prior criminal record, rendered such representation ineffective. We believe that defense counsel's decision was a matter of trial strategy and we are therefore reluctant to criticize such decision.

 LaFromboise, in arguing that his counsel rendered ineffective assistance, appears to contend that the failure to obtain the exclusion of Tim Hanson's and Miss Landry's in-court identification was the

fault of his counsel. We do not agree. Counsel for LaFromboise cross-examined both witnesses concerning the use of the photograph, asking what words were used and how the photograph was presented to them. In neither instance were prejudicial facts elicited by the use of the photograph, and we find none. Defense counsel is not incompetent in failing to object to testimony that was properly admissible by case law in other jurisdictions and not yet ruled upon in North Dakota. *Azure, supra* 243 N.W.2d at 365–367. The approach used by LaFromboise's counsel in the instant case—seeking to discover those additional facts that might have rendered such an identification procedure improper—is in substantial accord with our recent decision in *Azure, supra.*

Our perusal of the record indicates that LaFromboise's defense counsel clearly met the standards enunciated by this court in *State v. Metzner, supra.*

For the reasons stated, the judgment of the district court is affirmed.

PEDERSON, VOGEL and SAND, JJ., and LARRY M. HATCH, District Judge, concur.

RALPH J. ERICKSTAD, Chief Justice, deeming himself disqualified did not participate; LARRY M. HATCH, Judge of the Third Judicial District sitting in his place.