1999 ND 137

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Charles E. SYVERTSON, Defendant and Appellant.**

**Charles E. Syvertson, Petitioner and Appellant,**

v.

**State of North Dakota, Respondent and Appellee.**

Nos. 980269, 980270, 980340.

Supreme Court of North Dakota.

July 13, 1999.

Rehearing Denied July 29, 1999.

Charles E. Syvertson, pro se, Bismarck, for defendant and appellant/petitioner and appellant.

Wade Webb, Assistant State's Attorney, Fargo, for plaintiff and appellee/respondent and appellee.

MARING, Justice.

[¶ 1] Charles Syvertson appeals from a criminal judgment entered on August 13, 1998, seeking review of the trial court's orders denying several of his pre-trial motions. Syvertson also appeals from the trial court's order dismissing his petition for post-conviction relief. We affirm.

I

[¶ 2] The issues in this appeal stem from an information filed by the State on July 11, 1997, alleging one count of gross sexual imposition (GSI) and one count of kidnapping, both as class B felonies, stemming from an incident in West Fargo on July 10, 1997. The two-count information was numbered CR 97–2639. On November 26, 1997, the State filed a second information charging an additional count of GSI, as a class A felony, stemming from the same incident in West Fargo on July 10, 1997. This information was numbered CR 97–4965. On February 11, 1998, the trial court granted the State's motion to file a single amended information to be consolidated as CR 97–2639.

[¶ 3] Syvertson currently has a second appeal before the Court. In that appeal, Crim. No. 980027, Syvertson appealed from a criminal judgment entered on a jury verdict finding him guilty on two counts of GSI, which stemmed from two incidents with a minor girl in Fargo during late 1993. *See State v. Syvertson*, 1999 ND 134, 597 N.W.2d 652. The State filed the information in that case, which we will refer to as the "Fargo case," on July 17, 1997.

A. Factual Background

[¶ 4] On July 10, 1997, at approximately 4:00 p.m., Officer Schenck of the West Fargo Police Department was dispatched to talk with Marilyn Capouch of West Fargo about the report of a suspicious vehicle in her neighborhood. Schenck interviewed Marilyn and her daughter Jennifer. Jennifer told Schenck she had been walking near her home when a man in an older brown car stopped and offered to give her a ride home, which she refused. Later, Jennifer and her mother saw the car drive by their home so they got into their car and followed the vehicle. They then called in the license plate number and the police ran a license check. The information came back as a brown, 2–door Ford registered to Syvertson. Records also showed Syvertson's driving privileges were suspended.

[¶ 5] At approximately 5:00 p.m., Sgt. Birrenkott of the West Fargo Police Department had three officers working on a possible abduction. Autumn Nelson, age 19, reported through a 911 call that she had seen a white male driving around the Vet's pool area in West Fargo and approaching young girls. Nelson reported seeing this man approach a young girl, put her bike in the trunk, and force the girl into the car.

[¶ 6] In the meantime, Officer Schenck was on patrol looking for Syvertson's car. When he located it driving on 13th Avenue in West Fargo he initiated a traffic stop at around 7:00 p.m. Syvertson was arrested for driving under suspension and taken into custody. His car was inventoried and then impounded.

[¶ 7] At approximately 7:30 p.m., a woman called the West Fargo Police Department to report that her 11–year–old daughter had just returned home, claiming she had been molested. Sgt. Birrenkott was dispatched to interview the minor

child. She told him a man in a brown car stopped her outside the Vet's swimming pool and offered to help her with her bike and give her a ride home. The man got out of the car, put her bike in his trunk, and forced her to get into the car. He then drove to the St. Andrew's church parking lot where he had her take her clothes off, kissed her breasts and licked and touched her vaginal area. The minor child then said the man drove just out of town and pulled off the road where he made her get out of the car and undress again. Then he raped her. Birrenkott's interview with the minor child took place at 11:00 p.m. on July 10, 1997.

[¶ 8] At 12:43 a.m. on July 11, 1997, a magistrate issued a search warrant for, among other things, samples of Syvertson's hair, blood, semen, fingerprints, and saliva, the clothes he was wearing when arrested, and a photograph for the purposes of a line-up. The State filed the two-count information the same day.

### B. Procedural Background

[¶ 9] On July 14, 1997, Syvertson made an initial appearance and was appointed indigent defense counsel. On July 29, 1997, Syvertson waived a preliminary hearing and requested an independent psychiatric evaluation, which the court granted. The evaluation was received and filed with the court on September 10, 1997.

[¶ 10] On October 6, 1997, the State gave notice of intent to prosecute Syvertson as a habitual offender under N.D.C.C. § 12.1–32–09, which the court ordered sealed on October 16, 1997. Four days later the information appeared in a Fargo newspaper.

[¶ 11] On November 26, 1997, after receipt of DNA test results, the State filed an amended information alleging an additional count of GSI (a rape charge), as a class A felony. Because a preliminary hearing had not been held on the additional count, the trial court initially denied joinder of the two informations. The State then filed a separate information, num-

bered CR 97–4965, on December 23, 1997. Shortly after, Syvertson made an initial appearance on the one count information and, among other things, elected to proceed pro se on that count.

[¶ 12] On January 15, 1998, a preliminary hearing was held on CR 97–4965. The court found probable cause and bound it over for trial. At a hearing on February 4, 1998, the court granted the State's motion to join the two informations. At the hearing, Syvertson's court-appointed counsel argued against joinder of the informations; however, Syvertson was not allowed to speak on his own behalf regarding the State's motion.

[¶ 13] On March 18, 1998, the court heard 21 motions Syvertson or his counsel had filed since January 10, 1998. Nearly all of the motions were denied. On August 12, 1998, Syvertson conditionally pled guilty under N.D.R.Crim.P. 11(a)(2), preserving his right to appeal all adverse pretrial rulings. The trial court accepted the plea agreement, reduced the two class B felonies to 10 years each, and specifically stated the sentence was imposed without regard to Syvertson's habitual offender status. As a result, Syvertson was sentenced 12 years for one count of GSI (class A felony); 10 years for one count of GSI (class B felony); and 10 years for one count of kidnapping (class B felony). The court further ordered the three sentences to run concurrently but consecutive to the sentence imposed in the Fargo case. Syvertson timely appealed.

[¶ 14] On August 27, 1998, Syvertson filed a petition for post-conviction relief, alleging the State failed to produce certain documentary evidence relating to the convictions which are the subject of his direct appeal. The state moved for dismissal of the application due to the fact that, in part, the basis for Syvertson's application was an alleged discovery violation occurring after his guilty plea. The district court dismissed, concluding "the petition fails to state any sort of a colorable claim under the Post–Conviction Procedure Act." Upon

Syvertson's timely appeal from the district court's order denying his post-conviction relief petition, the two appeals were consolidated.

## II

[¶ 15] Syvertson raises several issues on appeal. We will address only those which merit our attention.

### A

[¶ 16] Syvertson argues he was denied due process because the State's request to have him sentenced as a habitual offender, although ordered to be sealed, was later disclosed in a Fargo newspaper.

[¶ 17] Section 12.1–32–09, N.D.C.C., provides for extended sentences for dangerous special or habitual offenders. Unlike his appeal in *Syvertson*, 1999 ND 134, 597 N.W.2d 652, there was no jury in this case. Here, Syvertson claims he was prejudiced by the trial court's knowledge of the State's intent to prosecute him as a habitual offender, but unlike the federal cases upon which Syvertson relies, "[t]he North Dakota enhanced sentencing statute contains no language prohibiting the trial judge from learning of the notice prematurely." *Syvertson*, 1999 ND 134, ¶ 30, 597 N.W.2d 652. "The obvious intention of the statute is to keep this information from being disclosed to the jury." *Id.* at ¶ 31. Clearly, it was not error for the trial court to have knowledge of the State's intent to prosecute Syvertson as a habitual offender. In any event, we fail to see how Syvertson was prejudiced by the court's knowledge of this information as the court specifically sentenced him "without regard to N.D.C.C. § 12.1–32–09(1)(c) and ... whether the defendant was a habitual offender."

### B

[¶ 18] Syvertson also contends the trial court erroneously denied his request for a second, independent psychiatric evaluation.

[¶ 19] On July 29, 1997, Syvertson, through court-appointed defense counsel, requested a psychological examination under N.D.C.C. §§ 12.1–04–06 and 12.1–04.1–02 to determine his competency to stand trial and his competency at the time of the alleged offenses. The psychiatric evaluation concluded Syvertson was fit to proceed with trial and did not lack substantial capacity to comprehend the harmful nature of his acts at the time they were committed. Syvertson argues the evaluation "outstepped its bounds," however, when it concluded, among other things, he was malingering, a pedophile, and had "sexual pre-occupation" which made him a threat to society. Because this violated his fifth and sixth amendment rights, Syvertson argues, the trial court should have granted his motion for a second, independent psychiatric evaluation. We disagree.

[¶ 20] In *Syvertson*, 1999 ND 134, ¶ 37, 597 N.W.2d 652 we concluded the State's use at the sentencing hearing of portions of the original psychiatric evaluation, which exceeded the purpose of the evaluation, violated Syvertson's fifth amendment right against self-incrimination when Syvertson had not presented any mental-status evidence during trial or at sentencing. In this case, however, the State did not use the psychiatric evaluation at any point during the criminal proceeding. At the sentencing hearing, the State relied primarily on the Parole and Probation presentence investigation report in arguing Syverton's sentence should run consecutive with the sentence he was already serving. We find no mention of the psychiatric evaluation in the transcript of the sentencing hearing, nor any reliance by the trial court on that evaluation. Under these circumstances, we conclude the independent psychiatric evaluation, while beyond the scope of its purpose, did not violate Syvertson's fifth amendment right against self-incrimination.[1] Moreover, we

1. "Because Syvertson requested the evalua- tion, there was no violation of his sixth

are not persuaded "the trial court's denial of [Syvertson's] request for a second evaluation deprived [him] of either his constitutional or statutory right to publicly funded mental health services" under N.D.C.C. § 12.1–04.1–02. *State v. Norman*, 507 N.W.2d 522, 524 (N.D.1993).

C

■ [¶ 21] Syvertson argues the inventory search of his vehicle after his arrest was unreasonable under the fourth amendment.

[¶ 22] At approximately 7:00 p.m. on July 10, 1997, Syvertson was stopped by Officer Schenck in West Fargo and arrested for driving under suspension. Syvertson was taken into custody, but before the vehicle was towed away to be impounded, all items in the vehicle, passenger compartment, and trunk were inventoried. Syvertson contends the inventory was merely a subterfuge for investigation.

■ [¶ 23] We explained the justification for an automobile inventory search in *State v. Garrett*, 1998 ND 173, ¶ 18 n. 3, 584 N.W.2d 502:

> Under the inventory search exception, "police need neither probable cause nor a warrant to search a vehicle." *State v. Holmes*, 569 N.W.2d 181, 186 (Minn. 1997) (citing *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)). In other words, the basis for an inventory search does not arise because the police suspect the vehicle contains contraband ·or evidence of crime. Rather, the basis for an inventory search rests on the administrative and caretaking functions which we identified in *Kunkel*, 455 N.W.2d at 211 (citing *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)). The Fourth Amendment examination· of an inventory search, therefore, turns not on the issue of probable cause, which is

amendment right to consult with counsel." *Syvertson*, 1999 ND 134, ¶ 37 n. 5, 597

the traditional basis for the warrantless search of vehicles, but on the issues of whether the vehicle was properly impounded and the search was carried out in accordance with standard police procedures. *Holmes*, 569 N.W.2d at 187; *see also State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457, 459 (1980) (discussing the difference between inventory searches and the "automobile exception").

In *State v. Kunkel*, 455 N.W.2d 208, 211 (N.D.1990), we explained an inventory search is "predicated on the interest in protecting the owner's property while it is in police custody." Here, the arresting officer testified the inventory was performed because Syvertson's vehicle was to be impounded, and it was routine procedure to do so to account for the owner's belongings while the vehicle is impounded. The various items in the vehicle and trunk were listed on an inventory list; none, however, were either searched or seized. While the arresting officer's knowledge of a possible abduction in the area coupled with the victim's description of a vehicle resembling Syvertson's may have caused the officer to be suspicious of Syvertson, "an inventory search does not somehow become illegal upon the discovery of incriminating objects which do not take the police by complete surprise." *Id.* at 212 (VandeWalle, J., specially concurring). We conclude the inventory search of Syvertson's vehicle shortly after his arrest was justified on these facts and thus not unreasonable under the fourth amendment.

D

[¶ 24] Syvertson raises two issues regarding the photographic lineup procedures used in identifying him shortly after the alleged abduction and his arrest.

■ [¶ 25] After the report of the abduction in the late afternoon on July 10, 1997, Sgt. Birrenkott interviewed wit-

N.W.2d 652.

nesses in the area of the Vet's pool and showed them a photograph of Syvertson. Some of these witnesses identified Syvertson as the person they had seen in the vicinity earlier that afternoon. Syvertson argues the single-photograph identification was impermissibly suggestive.

[¶ 26] A determination of the admissibility of an out-of-court photographic identification involves a two-step inquiry, whether: (1) the photographic identification procedure was suggestive; and (2) the identification was, under the totality of the circumstances, reliable and thus admissible. *State v. Packineau*, 423 N.W.2d 148, 150 (N.D.1988). The defendant has the initial burden to prove the identification procedure was suggestive. *Id.* at 150–151.

[¶ 27] While the use of a single photograph for suspect identification is undesirable, and multiple photographs or lineups are preferred, single photograph identifications are not per se impermissibly suggestive under all circumstances. *State v. Lafromboise*, 246 N.W.2d 616, 619–620 (N.D.1976); *State v. Azure*, 243 N.W.2d 363, 365 (N.D.1976); *see also State v. Denny*, 350 N.W.2d 25, 30–31 (N.D.1984). In each case, we consider the particular facts and balance the necessities against the dangers of misidentification. *Azure*, at 365. As in *Azure* and *Lafromboise*, the witnesses here made positive identifications within a few hours after the offense was committed. Moreover, Syvertson was positively identified by other witnesses as being in the vicinity of the Vet's pool earlier in the afternoon on the day of the abduction. *Azure*, at 366. Under the particular circumstances in this case, we find no indication of impermissible suggestiveness.

[¶ 28] Syvertson also argues the six-person photographic lineup was unduly suggestive because he was the only one in the lineup wearing a florescent orange, Cass County jail shirt. Syvertson bears the burden of proof of suggestiveness. *Packineau*, 423 N.W.2d at 150. Syvertson

admitted at the trial court level he had not presented any testimony or evidence other than to show the court the six-person photographic lineup and claim his appearance in a fluorescent orange shirt was suggestive. Under these circumstances, we would have to find as a matter of law a fluorescent orange suit, visible only from the shoulders and above, is impermissibly suggestive. The only two witnesses the record reveals were shown the six-person photographic lineup are the victim and another witness who had been in the area of the Vet's pool at the time of the abduction. Both viewed the photographic lineup within hours of the crime. The photographic lineup was never offered as an exhibit and therefore is not even in the record. At this time, all we have for our review is a black and white photocopy of the photographic lineup. We note one of the other persons in the lineup has a shirt on that appears to read "killer." We are not persuaded under *Packineau* this is any more suggestive than wearing a fluorescent orange shirt, visible only from the shoulders and above. We conclude, without more, Syvertson has failed to meet the burden of proof of suggestiveness.

[¶ 29] Because Syvertson has not established that the photographic identification procedures were suggestive, we do not need to examine whether they were reliable under the totality of the circumstances.

E

[¶ 30] Syvertson raises two issues concerning the joinder issue. As mentioned, the trial court initially denied the State's attempt at joinder, but after a preliminary hearing was held for the second information the court joined the informations finding "no conceivable reason why the matter cannot be joined for trial." Syvertson contends he was prejudiced because joinder of the two informations would prevent him from proceeding pro se in CR 97–4965 while having assistance of counsel on CR 97–2639, and he would also

be prevented from testifying in one case and not the other.

[¶ 31] Rule 8(a), N.D.R.Crim.P., allows two or more offenses to be charged in separate counts in the same complaint if they are of the same or similar character or are based upon the same act or transaction. The trial court's decision to consolidate offenses is discretionary, and we will not reverse such a decision unless there is clear abuse of that discretion. *State v. Warmsbecker*, 466 N.W.2d 105, 108 (N.D. 1991). The State delayed filing the second GSI count (rape charge) to wait for DNA test results confirming a genetic match of the bodily fluids. The four-month delay, in our opinion, was justified. We are not persuaded Syvertson was prejudiced by the joinder. He had waived his right to a speedy trial in CR 97–2639. The separate counts involve the same victim, the same defendant, on the same date, within the same general vicinity, and within a matter of hours. It is only the State's precaution which even put Syvertson in a position to act pro se on one count and have counsel on the other two. Like the trial court, we find no conceivable reason why the two informations should not have been joined, and conclude the trial court did not abuse its discretion.

[¶ 32] We are more concerned with the trial court's actions at the February 4, 1998, hearing where the State's motion to join the informations was granted. At that time Syvertson was still represented by court-appointed counsel on CR 97–2639, while proceeding pro se on CR 97–4965. At the hearing, Syvertson's counsel argued joinder would be improper for several reasons. After the State's rebuttal, Syvertson asked to speak on his own behalf, but the trial court refused, stating: "Well I can't hear from both you and your attorney. You've agreed to have an attorney on this and I'll allow the attorney to proceed on your behalf. If you wish to discuss this with your attorney and make some point, you may do so." Syvert-

son argues the trial court's actions denied him due process.

[¶ 33] We are troubled by the trial court's action in denying Syvertson an opportunity to argue on his own behalf. However, after reviewing the transcript of the hearing, we are confident Syvertson's court-appointed counsel on CR 97–2639 fully and competently argued in opposition to the State's motion to join CR 97–2639 and CR 97–4965. Syvertson has not indicated what additional arguments he would have made had he been permitted to argue. Nor does he claim his counsel refused or failed to present arguments on his behalf that he wanted presented to the court. Arguably, Syvertson's argument would have been merely duplicative of the arguments already made on his behalf by his counsel. While the trial court erred, we are not convinced it was a prejudicial error under these circumstances.

### III

[¶ 34] Syvertson also appeals the district court's denial of his petition for post-conviction relief. On August 27, 1998, Syvertson filed a petition for post-conviction relief, alleging the State failed to produce certain documentary evidence relating to the convictions which are the subject of this appeal. After Syvertson conditionally pled guilty on August 12, 1998, the trial court ordered Syvertson's court-appointed counsel to turn over to Syvertson the discovery materials he had received from the State so that Syvertson could proceed pro se in his criminal appeal. Syvertson received all the discovery material; however, a video-tape and pictures of the victim's vaginal examination were kept in the possession of correctional authorities. Syvertson was allowed to view the material whenever he wished, but only in the presence of his stand-by counsel or correctional authorities. Syvertson essentially argues he should be allowed to have the video-tape and pictures of the victim in his possession.

[¶ 35] We agree with the trial court Syvertson has failed to allege any sort of colorable claim under the post-conviction relief statute, N.D.C.C. § 29–32.1–01(1)(a)–(h). Syverston has not alleged a violation of any law, statute, state or federal constitutional provision, nor does he raise a jurisdictional defect, newly discovered evidence, or collateral attack argument. The post-conviction relief statute does not provide the relief which Syvertson seeks. We affirm the district court's order denying Syvertson's petition for post-conviction relief.

## IV

[¶ 36] We have carefully considered Syvertson's remaining arguments and conclude they are without merit. The orders of the trial court denying Syvertson's pretrial motions and his petition for post-conviction relief are affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.