Filed 5/25/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 112

State of North Dakota, Plaintiff and Appellee

v.

Leonard Eugene Norrid, Defendant and Appellant

No. 990308

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Georgia Dawson, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Wade L. Webb, Assistant State’s Attorney, P.O. Box 2806, Fargo, N.D. 58108-2806, for plaintiff and appellee.

Monty G. Mertz, P.O. Box 10396, Fargo, N.D. 58106-0396, for defendant and appellant.

State v. Norrid

No. 990308

Maring, Justice.

[¶1] Leonard Norrid appeals from a judgment of conviction resulting from his conditional pleas of guilty under N.D.R.Crim.P. 11(a)(2) to charges of burglary, aggravated assault, and terrorizing.  We conclude the eyewitness identification procedure employed in this case was not unnecessarily or impermissibly suggestive and Norrid’s statements to law enforcement were voluntary.  We affirm.

I

[¶2] At approximately 10:00 p.m. on June 6, 1999, a man entered Eileen Olson’s apartment through a patio door and robbed her.  According to Olson, the man was in her apartment for about ten to fifteen minutes.  The man hit Olson, cut her with a knife, and threatened to kill her.  Olson described her assailant as a 45 year old white male wearing a baseball hat, a dark plaid shirt, and blue jeans.  Olson was treated for her injuries at a Fargo hospital, where police officers showed her a picture of Norrid, a suspect they had detained and photographed near her apartment.  Olson did not have her glasses at the hospital, and she was unable to positively identify Norrid as her assailant.  After officers retrieved her glasses from her apartment, she was still unable to positively identify Norrid as her assailant, and she indicated “it was hard for me to look at those pictures cause my glasses were so bent out of shape.”  At approximately 12:30 a.m., Olson was taken to a location near the scene of the crime to personally view Norrid.  Olson indicated “[t]hey put a spot light on him and asked me if that was the man that had assaulted me.  And I said I was 99 percent sure, I said I just — I just — I hated to think that I would get an innocent man or anything and I wanted to stay and make sure.  So we sat for a long time until I was positive it was him.”

[¶3] Prior to Olson’s identification of Norrid as her assailant, police officers detained him and gave him warnings required by 
Miranda v. Arizona
, 384 U.S. 436 (1966).  After Olson identified Norrid, he was taken to the police station at approximately 3:00 a.m. and again given 
Miranda
 warnings.  Detective Jim LeDoux interviewed Norrid at the police station.  Norrid initially denied involvement in the incident, but at 6:15 a.m., he signed a written statement implicating himself in the incident.

[¶4] The State charged Norrid with burglary, aggravated assault, and terrorizing.  Norrid moved to suppress Olson’s identification of him, arguing it was unduly suggestive and violated his due process rights under the Fourteenth Amendment of the United States Constitution.  Norrid also moved to suppress statements he made to police officers, arguing the statements were extracted through deception and coercion and violated his privilege against self-incrimination under the Fifth and Fourteenth Amendments.  The trial court denied Norrid’s motions.  Norrid entered conditional pleas of guilty to the charges, reserving his right on appeal to review the trial court’s denial of his motions to suppress.

II

[¶5] In 
State v. Sabinash
, 1998 ND 32, ¶ 8, 574 N.W.2d 827 (citations omitted), we outlined our standard of review of a trial court’s denial of a suppression motion:

The trial court’s disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.  That standard of review recognizes the importance of the trial court’s opportunity to observe the witnesses and assess their credibility, and we “accord great deference to its decision in suppression matters.”

III

[¶6] Norrid argues Olson’s identification of him violated his due process rights.
(footnote: 1)  He argues Olson’s identification of him was not reliable and was inadmissible as evidence, because it was made in a suggestive atmosphere and the State failed to prove it was reliable under the totality of circumstances.

A

[¶7] Although an eyewitness identification is powerful and compelling evidence in a criminal prosecution, identification evidence may be riddled with innumerable dangers and variables which may seriously impinge a fair trial.  
See
 2 Wayne R. LaFave, et al., 
Criminal Procedure
 § 7.1 (2nd ed. 1999).  In 
United States v. Wade
, 388 U.S. 218, 228-29 (1967) (footnotes omitted), the United States Supreme Court described the perils of eyewitness identifications:

The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.  Mr. Justice Frankfurter once said: “What is the worth of identification testimony even when uncontradicted?  The identification of strangers is proverbially untrustworthy.  The hazards of such testimony are established by a formidable number of instances in the records of English and American trials.  These instances are recent—not due to the brutalities of ancient criminal procedure.”  The Case of Sacco and Vanzetti 30 (1927).  A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification.  A commentator has observed that “[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.”

Moreover, “[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.”

In 
Wade
, at 237-38, the Court held the Sixth Amendment guarantees an accused the right to counsel at a post-indictment lineup, and the absence of counsel at such a lineup renders trial testimony about the lineup identification inadmissible.  
See also
 
Gilbert v. California
, 388 U.S. 263 (1967).

[¶8] In 
Stovall v. Denno
, 388 U.S. 293, 302 (1967), a companion case to 
Wade
 and 
Gilbert
,
(footnote: 2) the Court held identification testimony must be suppressed if, under the totality of the circumstances, the procedure for identification “was so unnecessarily suggestive and conducive to irreparable mistaken identification” to constitute a denial of due process.  In 
Stovall
, at 295, a victim of a stabbing was hospitalized for major surgery to save her life, and the defendant was arrested for the offense and brought to the victim’s hospital room for a single-person show up.  As the Court explained, the defendant was the only Negro in the room and was handcuffed to one of five police officers who, with two members of the District Attorney’s office, brought the defendant to the hospital room.  
Id.
  From her hospital bed, the victim identified the defendant after being asked by an officer whether he “‘was the man’” and after the defendant repeated a “‘few words for voice identification.’”  
Id.
  At trial, the victim and the police officers testified about the victim’s identification of the defendant in the hospital room, and the victim also made an in-court identification of the defendant.  
Id.
  The Court condemned “[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup,” but concluded, under the totality of the circumstances, the immediate hospital identification was imperative.  
Id.
 at 302.  The Court said the victim was the only person who could exonerate the defendant; the hospital was not far from the jail; no one knew how long the victim might live; and, faced with the responsibility of identifying the attacker, the need for immediate action, and the knowledge the victim could not visit the jail, the police followed the only feasible procedure and took the defendant to the hospital room.  
Id.

[¶9] Since 
Stovall
, the Court has explained that, when the issue is whether a witness at an earlier identification can identify the defendant at trial, the analysis focuses on whether the prior identification was “so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.”  
Simmons v. United States
, 390 U.S. 377, 384 (1968).  In 
Neil v. Biggers
, 409 U.S. 188, 198 (1972), the Court recognized that, while the phrase “substantial likelihood of irreparable misidentification” was coined as the standard for deciding the admissibility of an in-

court identification in the wake of a suggestive out-of-court identification, the phrase works equally well, with the deletion of “irreparable,” as the standard for the admissibility of testimony concerning an out-of-court identification.

B

[¶10] Under the 
Stovall
 due process test, the determination of the admissibility of an identification involves a two-pronged analysis of (1) whether the identification procedure is impermissibly suggestive, and (2) if so, whether the identification nevertheless is reliable under the totality of the circumstances.  
See
 
Manson v. Brathwaite
, 432 U.S. 98, 109-14 (1977); 
Biggers
, 409 U.S. at 198-99; 
Simmons
, 390 U.S. at 384-85.  
See also
 
State v. Syvertson
, 1999 ND 137, ¶¶ 26-27, 597 N.W.2d 644, 
cert. denied
, 120 S.Ct. 383 (1999); 
State v. Packineau
, 423 N.W.2d 148, 150 (N.D. 1988).  
See generally
 2 LaFave at § 7.4 et seq.  The defendant has the burden of proving the identification procedure is impermissibly suggestive, and the State must then show the identification is reliable under the totality of the circumstances.  
Packineau
, at 150.

[¶11] The “suggestive” prong considers whether the identification procedure is “unnecessarily or impermissibly suggestive.”  
See
 
United States v. King
, 148 F.3d 968, 970 (8th Cir. 1998); 
United States v. Funches
, 84 F.3d 249, 253 (7th Cir. 1996); 
United States v. Watson
, 76 F.3d 4, 6 (1st Cir. 1996); 
United States v. Sleet
, 54 F.3d 303, 309 (7th Cir. 1995); 
United States v. Bautista
, 23 F.3d 726, 729 (2nd Cir. 1994); 
Johnson v. Dugger
, 817 F.2d 726, 729 (11th Cir. 1987); 
United States v. Henderson
, 719 F.2d 934, 936-38 (8th Cir. 1983). 
See generally
 2 LaFave, at § 7.4(b).  Professor LaFave explains the “unnecessarily or impermissibly suggestive” prong can be separated into two inquiries: (1) whether the identification is suggestive, and (2) whether there is a good reason for not using a less suggestive procedure.  2 LaFave at § 7.4(b).  Under the “suggestiveness” inquiry, the practice of showing suspects singly and not as part of a lineup is widely condemned.  
E.g.
, 
Stovall
, 388 U.S. at 302.  
See
 2 LaFave at §§ 7.4(b) and (f).  Even a multi-person lineup or a photographic array may be suggestive.  
See
 
Foster v. California
, 394 U.S. 440, 443 (1969); 
Simmons
, 390 U.S. at 383.

[¶12] If a suspect is shown singly in a “suggestive” manner, the inquiry then turns to whether the showup is “unnecessarily or impermissibly” suggestive and looks at factors like emergency situations where a victim may be facing imminent death, 
Stovall
, 388 U.S. at 302, or other exigent circumstances like quickly apprehending and identifying a perpetrator, or moving the investigation to other suspects.  
Simmons
, 390 U.S. at 384-85.  
See, e.g.
, 
King
, 148 F.3d at 970 (quick on-the-scene identification essential to free innocent suspects and inform police if further investigation necessary); 
Funches
, 84 F.3d at 254 (showup allows identification before suspect can alter appearance and while witness’s memory fresh; permits quick release of innocent persons).  
See generally
 LaFave at § 7.4(b) and (f).

[¶13] Under the due process formulation emanating from 
Stovall
, even if an identification procedure is unnecessarily or impermissibly suggestive, there is no due process violation requiring exclusion of identification evidence if the identification is reliable under the totality of the circumstances and the factors outlined in 
Manson
, 432 U.S. at 114 and 
Biggers
, 409 U.S. at 199-200.  
See
 
Packineau
, 423 N.W.2d at 150.  
See generally
 2 LaFave, at § 7.4(c).  In  
Manson
, at 114, the United States Supreme Court explained “reliability is the linchpin in determining the admissibility of identification testimony,” and outlined the following factors from 
Biggers
, at 199-

200,
(footnote: 3) for evaluating the reliability of an identification:

[T]he opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

C

[¶14] We apply the due process formulation emanating from 
Stovall
 to the trial court’s denial of Norrid’s motion to suppress evidence about Olson’s identification of him.  
See
 
Syvertson
, 1999 ND 137, ¶¶ 26-27, 597 N.W.2d 644; 
Packineau
, 423 N.W.2d at 150.  The trial court ruled:

Well, I’ll begin with the motion in its — the aspect of the one-on-one identification of the Defendant by the alleged victim in this case.  This is — has been set out in 
Neil vs. Biggers
 five factors which the Court should use to evaluate the likelihood of misidentification and reliability of the identification.  Number one, the opportunity of the witness to view the criminal act at the time of the crime.  Number two, the witnesses (sic) degree of attention.  Number three, the accuracy of the witness’ prior description of the criminal.  Four, the level of certainty demonstrated by the witness at the confrontation and five, the length of time between the crime and the confrontation.  And those wouldn’t necessarily address the one-on-one, but really just the identification by the alleged victim of the Defendant.  The Court clearly would have preferred a different scenario for having this alleged victim make her identification.  It does seem to me that the setting was suggestive in that the Defendant was in handcuffs and he was surrounded by police and there was a spotlight shining on him and no other options were presented to her.  But if I follow the 
Biggers
 analysis of reliability of the I.D., in spite of the fact that she really no other options before her, it appeared to the Court that she did have a very good opportunity to view the Defendant during the commission of the crime.  Her apartment was well lit.  She seemed to have a high degree of attention.  The description that she gave to the officers at the time she was interviewed matched in every detail except the jacket that he was wearing.  So there was a discrepancy with regard to the shirt, but the jeans, the white tennis shoes, the black hat, the age and sex were all the same.

The level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation, there appeared to be a short period of time between the commission of crime and the confrontation, which the Court views to be significant.  In the courtroom yesterday, the Court had an opportunity to observe the demeanor of the witness or the alleged victim and she appeared credible, she appeared to have hesitated for the reason that she did not want to make a misidentification.  She kept saying that she wanted to be sure.  When she arrived, she said she was 99 percent sure and then she waited 30 to 40 minutes before confirming that identification.  I don’t believe that it had as much to do with her not having an idea — a clear idea that it was in fact the Defendant, but rather her wanting to be contentious [sic] about her identification.  In any event, that was the impression the Court gleaned from her testimony yesterday.  And so I feel on that basis that the reliability aspect of the confrontation has been met.

The officers testified yesterday afternoon at length about the reasons why the I.D. was set up the way it was and obviously they were concerned about having the right man and wanting to have the I.D. made as quickly as possible so that if there was a perpetrator loose on the street, that the man they had detained could be released and they would be able to then pursue someone else.  So there were reasons why it occurred the way that it did.  It’s just always better and it isn’t a perfect world but it always is better to have more.  I think that their handling of that situation was not inappropriate, so the motion with respect to the identification of the Defendant by the alleged victim is denied.

[¶15] Although Norrid claims it is not entirely clear the trial court applied the correct analysis in deciding whether this showup was suggestive, the court’s decision states “it does seem to me that the setting was suggestive in that the defendant was in handcuffs and he was surrounded by police and there was a spotlight shining on him and no other options were presented” to the victim.  The court effectively decided this showup was suggestive.  However, that decision does not end the inquiry, which then turns to whether the identification was “unnecessarily or impermissibly” suggestive.  The trial court examined the reasons why the identification was conducted in this manner, citing law enforcement concerns about apprehending the right person as quickly as possible so, if there was a perpetrator still at large, Norrid could be released and law enforcement could pursue the perpetrator.  Similar reasons have generally sufficed to support a decision an identification was not unnecessarily suggestive.  
Simmons
, 390 U.S. at 384-85; 
Stovall
, 388 U.S. at 302.  
See also
 
King
, 148 F.3d at 970; 
Watson
, 76 F.3d at 6-7; 
Bautista
, 23 F.3d at 730.  
See generally
 2 LaFave at §§ 7.4(b) and (f). 

[¶16] We caution that single-person showups generally should be avoided or used only when absolutely necessary in very limited circumstances.  
Stovall
, 388 U.S. at 302.  
See also
 
State v. Azure
, 243 N.W.2d 363, 365 (N.D. 1976).  Here, several law enforcement officers testified they were concerned about quickly apprehending the perpetrator of a crime involving the unauthorized nighttime entry into a victim’s home and the infliction of serious physical injuries. Giving deference to the trial court’s opportunity to assess the credibility of the witnesses, 
see
 
Sabinash
, 1998 ND 32, ¶ 8, 574 N.W.2d 827, we conclude the identification procedure employed in this case was not “unnecessarily or impermissibly” suggestive.  Because we conclude the identification procedure was not unnecessarily or impermissibly suggestive, it is unnecessary to examine whether it was otherwise reliable under the totality of the circumstances.  
See
 
Syvertson
, 1999 ND 137, ¶ 29, 597 N.W.2d 644; 
Packineau
, 423 N.W.2d at 151.  We hold the trial court did not err in denying Norrid’s motion to suppress evidence of Olson’s identification of him.
(footnote: 4)

IV

[¶17] Norrid argues the trial court erred in deciding any oral or written statements he made to Detective LeDoux were voluntary and admissible into evidence.  Norrid argues those statements were not voluntary and were inadmissible as evidence against him, because he was intoxicated, very tired, and frightened, and his statements were made in a setting which indicated they were not the product of his free will.

[¶18] When a confession is challenged on due process grounds, the ultimate inquiry is whether the confession was voluntary.  
Sabinash
, 1998 ND 32, ¶ 11, 574 N.W.2d 827.  A confession is voluntary if it is a product of the defendant’s free choice rather than a product of coercion.  
Id.
  Coercion in and of itself does not invalidate a confession.  
Id.
  A confession is the product of coercion if the defendant’s will is overborne at the time the confession is given.  
Id.

[¶19] We use the totality-of-the-circumstances test to examine voluntariness.  
Sabinash
, 1998 ND 32, ¶ 12, 574 N.W.2d 827.  Under that inquiry, we focus on two elements: (1) the characteristics and condition of the accused at the time of the confession, and (2) the details of the setting in which the confession was obtained with no one factor being determinative.  
Id.
  The first element focuses on the characteristics and condition of the accused including the age, sex, race, education level, physical and mental condition, and prior experience with police.  
Id.
  The second element includes duration and conditions of detention, police attitude toward the defendant, and adverse pressures that sap the accused’s powers of resistance or self control.  
Id.

[¶20] Here, the trial court decided:

And that takes us to the confession.  The lack of voluntariness issue.  The Court is required to examine the totality of the circumstances to determine whether there were diverse pressures, which would zap (sic) [an accused’s] powers of resistence or self control.  There are many cases that address these voluntariness issues.  In this particular case, the Defendant was Mirandized, worst case scenario, twice.  From the State’s standpoint, best case three times.  The Court believes that he was Mirandized three times.  I do believe Officer LeDoux when he — Detective LeDoux when he said he gave the Defendant his Miranda rights before he began his questioning of him.  He indicates that the time spent with him was approximately one and a half to two hours.  Granted the Defendant was detained for a longer period of time.  That the Court’s view is that the interrogation portion of the evening lasted in the range of one and a half to two hours.  During that period of time, the Defendant did not ask for a lawyer, having understood that he did have the right to an attorney and the right to have one appointed if he could not afford one.  That he had the right to stop the interrogation and not answer any questions.  The Court is not convinced that he was intoxicated to the point where he could not understand what was happening.  As I address the condition of the accused, it appears to me that he was tired, not intoxicated, but tired.  The Court does not find that being tired alone would be a sufficient justification for my finding that he had been zapped (sic) of his powers of resistence or self control.  We’re all tired at times.  It does not necessarily cause a person to confess to a crime against his will.  The mere fact of being tired.  So I don’t think there’s anything about his condition other than tiredness which presented a problem for the Defendant.  And I don’t think that alone is enough of a justification to throw out the confession.  So even though  — and it does appear to be a bare bones confession, it’s not my job to consider the contents at this time.  It’s a motion to suppress that document.  I find that the document — the confession can be admitted or at least I’m not suppressing it.  So in that regard — that aspect of the motion is denied as well.

[¶21] Giving deference to the trial court’s opportunity to assess the credibility of the witnesses, 
see
 
Sabinash
, 1998 ND 32, ¶ 8, 574 N.W.2d 827, we conclude the court’s decision Norrid’s statements to Detective LeDoux were voluntary and admissible is not contrary to the manifest weight of the evidence.  We conclude the trial court did not err in denying Norrid’s motion to suppress those statements.

V

[¶22] We affirm the judgment.

[¶23] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
Norrid has not marshaled a separate state constitutional argument about the identification procedure, and we decide his claim under federal due process guidelines.

2:    
In 
Stovall
, 388 U.S. at 296-301, the Court refused to retroactively apply the right-

to-counsel decisions of 
Wade
 and 
Gilbert
.  Since 
Stovall
, the Court’s analysis of retroactive application of new rules for criminal prosecutions has been revised.  
See
 
Griffith v. Kentucky
, 479 U.S. 314, 320-28 (1987) (disapproving retroactivity analysis of 
Linkletter v. Walker
, 381 U.S. 618 (1965) and 
Stovall
).

3:    
Although Norrid has not challenged the factors for assessing reliability outlined in 
Manson
 and 
Biggers
, we note scholars have expressed concern with the validity and application of those factors as indicators of reliability.  
See
 2 LaFave, at § 7.4(c).

4:    
Even if a trial court decides evidence of an eyewitness identification is admissible, federal courts have generally endorsed a separate jury instruction, derived from 
United States v. Telfaire
, 469 F.2d 552 (D.C. Cir. 1972), on the issue of the identification.  
See, e.g.
, 
United States v. Tipton
, 11 F.3d 602, 606 (6th Cir. 1993); 
United States v. Anderson
, 739 F.2d 1254, 1257 (7th Cir. 1984); 
United States v. Cain
, 616 F.2d 1056, 1058 (8th Cir. 1980).  
See generally
 1A Kevin F. O’Malley, et al., 
Federal Jury Practice and Instructions
 §§ 14.10-14.11 (5th ed. 2000).