STATE of North Dakota, Plaintiff and Appellee,

v.

Glen WALDEN, Defendant and Appellant.

Crim. No. 903.

Supreme Court of North Dakota.

July 21, 1983.

Thomas H. Falck, Jr., Asst. State's Atty., Grand Forks, for plaintiff and appellee; submitted on brief.

Robert A. Alphson Law Office, Grand Forks, for defendant and appellant; argued by Robert A. Alphson, Grand Forks.

ERICKSTAD, Chief Justice.

Defendant/appellant, Glen Otto Walden, was charged with and ultimately adjudged guilty in a bench trial of attempted sexual imposition. Subsequent thereto, a judgment of conviction, dated September 23, 1982, was entered by the Grand Forks County Court of Increased Jurisdiction from which Walden now appeals. For the reasons hereinafter stated, we affirm.

The facts relevant to this appeal are not in dispute and thus can be briefly summarized. On February 15, 1982, a man wearing a yellow ski mask and faded dungarees entered the Valley Dairy convenience store where Donna Odom worked. Realizing that this unidentified man "had his pants down" and "his penis in his right hand," Mrs. Odom ordered him to leave. Notwithstanding Mrs. Odom's directive, the man in question advanced toward her. Mrs. Odom therefore picked up the telephone and dialed "911", the police emergency number. As Mrs. Odom was dialing this number, the man pushed her to the floor and pulled her face toward his penis. Simultaneous therewith, the police answered the telephone and Mrs. Odom told them that there was a "naked man in the Valley Dairy store." Upon realizing that the police had answered the telephone, the man retreated approximately three feet, masturbated until he ejaculated, and then left the store.

Shortly thereafter, Officer Gunderson arrested Walden for such incident and advised him of his rights in the following manner:

"The right to remain silent. Anything he said could and would be used against him in the Court of Law. And that he had the right to have an attorney present if he so wished, before giving a statement of any type."

After partially advising Walden of his rights pursuant to *Miranda,* the officer asked Walden "where he had disposed of the yellow ski mask." Upon receiving Walden's reply, the officer located the ski mask which was later introduced as evidence in Walden's trial. Thereafter, Walden was transported to the police station where he signed a written statement of his rights, an acknowledgment of waiver of rights, and a statement confessing that he had been the individual at the Valley Dairy store. This statement was likewise admitted as evidence against Walden at his trial.

On appeal, Walden raises three issues. The first and most crucial of which is:

Whether or not Walden's statement to Officer Gunderson with regard to where the yellow ski mask was located should have been suppressed by the trial court on the basis that Walden was not advised of his right to have an attorney appointed if he could not afford one.

The State concedes that Walden was not fully advised of his rights prior to his being interrogated by Officer Gunderson. The officer's undisputed testimony in this regard is as follows:

"Q Officer Gunderson, going back to the first time that you gave Mr. Walden his rights, were you able to initially complete giving him his rights?

"A No, I was not. Because after I was a little better than half-way through he interrupted me and said, 'I know my rights. You don't have to go any further.' Or something to that effect."

■ *Miranda v. Arizona* clearly delineates the procedural safeguards to be followed when an individual is subjected to custodial interrogation by a police officer:

"[U]nless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1965).

These specific warnings, however, do not constitute a ritualistic formula to be administered inflexibly. *Commonwealth v. Wilbur,* 353 Mass. 376, 383, 231 N.E.2d 919, 923 (1967), *cert. denied* 390 U.S. 1010, 88 S.Ct.

1260, 20 L.Ed.2d 161 (1968). Furthermore, the United States Supreme Court has held in *Michigan v. Tucker* that: "a failure to give interrogated suspects full *Miranda* warnings does not entitle the suspect to insist that statements made by him be excluded in every conceivable context." 417 U.S. 433, 451, 94 S.Ct. 2357, 2367, 41 L.Ed.2d 182 (1973).

In the case at bar, when Officer Gunderson attempted to advise Walden of his right to have an attorney appointed if he was indigent, Walden interrupted the officer and said: "I know my rights. You don't have to go any further." Where, as in this instance, the State has made a reasonable effort to inform the defendant of his rights in accordance with the dictates of *Miranda* and the defendant has refused to listen, the defendant has waived his right to be informed. *State v. Thomas,* 16 Wash. App. 1, 9–10, 553 P.2d 1357, 1363 (1976); *State v. Ouimette,* 110 R.I. 747, 774–76, 298 A.2d 124, 140 (1972); *Myers v. State,* 256 So.2d 400, 402 (Fla.1972); *State v. Perez,* 182 Neb. 680, 157 N.W.2d 162, 164 (1968), *cert. denied* 393 U.S. 886, 89 S.Ct. 200, 21 L.Ed.2d 163 (1968). In accordance therewith, Walden is estopped from asserting that his rights as set forth in *Miranda* were infringed upon.

In addition, since the defendant retained counsel at both his trial and on appeal, and there is nothing in the record to indicate that he was in fact indigent, failure to give this defendant his full *Miranda* rights did not prejudice him. Hence, Officer Gunderson's failure to advise Walden of his right to a court-appointed attorney, a warning which was inapplicable to him, was not an error which affected Walden's substantial rights. *United States v. Messina,* 388 F.2d 393, 395 (2d Cir.1968), *cert. denied* 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968); *United States v. Fisher,* 387 F.2d 165, 169–170 (2d Cir.1967), *cert. denied* 390

U.S. 953, 88 S.Ct. 1047, 19 L.Ed.2d 1146 (1968); *United States v. Lubitsch,* 266 F.Supp. 294, 297 (S.D.N.Y.1967); *United States v. Hecht,* 259 F.Supp. 581, 583 (W.D. Pa.1966); *People v. Baker,* 19 Mich.App. 480, 172 N.W.2d 892, 896 (1969); *Commonwealth v. Wilbur,* 353 Mass. 376, 383, 231 N.E.2d 919, 923 (1967), *cert. denied* 390 U.S. 1010, 88 S.Ct. 1260, 20 L.Ed.2d 161 (1968); *State v. Gray,* 268 N.C. 69, 80–83, 150 S.E.2d 1, 11–12 (1966), *cert. denied* 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967). Accordingly, we conclude beyond a reasonable doubt that such error, if any, was harmless and therefore does not mandate a reversal.[1] Rule 52(a), N.D.R.Crim.P.; *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966); *State v. Trieb,* 315 N.W.2d 649 (N.D.1982).

The second issue to be adjudicated on appeal is:

> Whether or not, considering the totality of the circumstances, Walden's written confession at the police station was voluntarily made and therefore properly admitted into evidence by the trial court.

Whether or not Walden's statement was voluntary is contingent upon two factors: first, whether or not the defendant voluntarily waived his right to remain silent; and, second, whether or not the defendant's statement was voluntarily made. *State v. Roquette,* 290 N.W.2d 260, 264 (N.D.1980). The standard of review to be utilized when resolving a question of voluntariness is whether or not, considering the totality of the circumstances, the trial court's determination that Walden's statement was voluntary is manifestly against the weight of the evidence. *State v. Carlson,* 318 N.W.2d 308, 311 (N.D.1982).

Walden alleges that his statement was not voluntary because: 1) he had only slept four hours in the 48-hour period preceding his statement; and 2) he was under the

---

1. Our analysis of the issue presented by this factual situation is not intended to discourage law enforcement officials from exercising their duties pursuant to *Miranda,* inasmuch as it is unequivocally "... the better practice to have anticipated *Miranda* and exercised the simple

expedient of considering the defendant as a possible indigent and advising him of his right under such circumstances..." *United States v. Lubitsch,* 266 F.Supp. 294, 297–98 (S.D.N.Y. 1967).

influence of alcohol at the time he made the statement. *See generally State v. Discoe,* 334 N.W.2d 466 (N.D.1983). In addition to these facts, Walden attacks the trial court's determination that his statement was voluntary on the basis of a comment made to Walden by a police officer. Specifically, after a police dog sniffed Walden and indicated that he recognized him, the dog's handler said: "... [this] dog [has] a good court record ... [you] could just as well go down and make the statement and do it the easy way." Upon being presented with these same facts, the trial court concluded that Walden's actions were voluntary.

■■■■ Notwithstanding the factors referred to and relied upon by Walden, the trial court's determination that both Walden's waiver of his right to remain silent and his subsequent statement were voluntary, is not manifestly against the weight of the evidence for three reasons. First, Officer Gunderson testified that Walden was in control of his faculties and was not, in fact, intoxicated on the night in question. Second, lack of sleep does not unequivocally require a court to determine that Walden's actions were rendered involuntarily. *See, Rouquette,* 290 N.W.2d, *supra* at 264–65. And, third, the statements made by the dog handler were not of such a coercive nature as to override Walden's free will. Consequently, Walden's statement was properly admitted into evidence.[2]

■■■■ Walden's third and final contention is that the State's evidence against him was insufficient for the trial court to determine beyond a reasonable doubt that Walden committed the crime of attempted sexual imposition. A person can be adjudged guilty of a criminal attempt if "acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission

of the crime." Section 12.1–06–01(1), N.D. C.C. The crime referred to in this instance is sexual imposition. Thus, to convict Walden, the State was required to prove beyond a reasonable doubt that Walden engaged in conduct which constituted a substantial step toward commission of the crime of sexual imposition. One is guilty of sexual imposition if he "engages in a sexual act or sexual contact with another ... [and] compels the other person to submit by any threat that would render a person of reasonable firmness incapable of resisting." Section 12.1–20–04, N.D.C.C.

The evidence proffered by the State through the testimony of Mrs. Odom unequivocally indicates that Walden, through the use of force, took a substantial step toward committing a sexual act[3]; that act being contact between Walden's penis and the victim, and her mouth:

"A Well, before I got the last number dialed, he was on me. He had his hands on me. He pushed me back....

"He was holding me back, holding me down. He had his right—his left—let's see, he was holding his penis with his right hand. He never let go of that. When he grabbed ahold of me it was in his right hand. It was his left hand that he used to shove me back and to pull me toward him.

"Q Now, did he grab you?

"A He grabbed my shoulder and my neck like this.

\* \* \* \* \* \*

"Q ... You indicated he put his left hand on your shoulder behind your neck. Did he apply any pressure with that hand?

"A He pulled my head towards his body. He had his hand on his penis. He put his penis in my face. He did not touch my face. He grabbed my neck and

---

**2.** Walden's contention that the written statement should have been suppressed as a "fruit" of prior illegal police actions is without merit inasmuch as we have determined that, under the circumstances of this case, Officer Gunderson adequately informed Walden of his rights pursuant to *Miranda.*

**3.** Under Section 12.1–20–02, N.D.C.C., a sexual act is defined as "sexual contact between human beings who are not husband and wife consisting of contact between ... the mouth and the penis ..."

head and pulled me toward him. At that time the police answered the phone.

"Q Were you pulling back?

"A I was pushing. I had my left hand on the defendant. I was screaming for help the whole time, and I pushed him back with my right hand.

"Q How close to your face did his penis come?

"A I think about three inches."

The defense argues that further testimony by Mrs. Odom reveals that when Walden pushed Mrs. Odom to the floor he was not attempting to complete a sexual act but was merely attempting to knock the telephone from Mrs. Odom's hand and thus escape apprehension.[4]

However, in criminal cases, we have repeatedly held that "at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." *State v. Olmstead,* 246 N.W.2d 888 (N.D.1976), *cert. denied* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978); *State v. Neset,* 216 N.W.2d 285 (N.D.1974); *see also, State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D.1973); *State v. Champagne,* 198 N.W.2d 218, 226 (N.D.1972); *State v. Carroll,* 123 N.W.2d 659, 668 (N.D.1963). Reading a cold transcript is not "a substitute for hearing and observing witnesses testify." *Olmstead,* 246 N.W.2d *supra* at 890. Thus, notwithstanding the conflicting evidence and based on the fact that the trial court heard and observed the witnesses, we conclude that the trial court's determination of Walden's guilt was supported by sufficient evidence.[5] We therefore affirm.

VANDE WALLE, PEDERSON, SAND and PAULSON, JJ., concur.

---

4. Mrs. Odom's testimony in this regard is as follows:

"Q Isn't it a fact that when he came behind the counter, when he came back there he tried to pull the phone out of your hand?

"A I do not remember him touching the phone.

"Q On that evening, did you make this statement on 2–15–82 in police headquarters or over the phone to Officer Gunderson, 'Complainant stated the subject then came over, pushed her down in the corner and tried to get the phone away from her.'"

5. Walden also contends that he was intoxicated on the night in question and, therefore, he did not have the requisite intent to commit the crime of sexual imposition. However, the issue of whether or not Walden was intoxicated was a question for the trial court. Accordingly, we will not substitute our judgment for that of the trial court where there is competent and substantial evidence such as the testimony of Officer Gunderson to support the trial court's determination:

"Q Did Mr. Walden show any signs of intoxication that night?

"A Yes, he had been drinking a little bit. But he was not intoxicated.

"Q Did he appear alert to you?

"A Yes, he did.

"Q Did he have any difficulty in answering any questions, such as his name or any other information that you sought from him?

"A No, he did not.

"Q Was there any difficulty with his speech?

"A No, there was not.

"Q Did you notice any difficulty in his walking?

"A No, there was no difficulty what-so-ever."