1998 ND 32

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Larry SABINASH, Defendant and Appellant.**

**Criminal No. 970163.**

Supreme Court of North Dakota.

Feb. 12, 1998.

John E. Greenwood (argued), State's Attorney, Jamestown, for plaintiff and appellee.

James A. Wentz (argued), of Kropp Law Office, Jamestown, for defendant and appellant.

MARING, Justice.

[¶ 1] Larry Sabinash appeals from a criminal judgment, challenging the court's refusal to suppress statements he made to law enforcement officers. We affirm.

[¶ 2] Sabinash's girlfriend E.B. ["Elaine," a pseudonym] and her daughter M.B. ["Mary"] lived with Sabinash for many years. In 1996, Mary sought a protection order against Sabinash, alleging he had regularly engaged in sexual acts with her since 1989, when she was eleven years old. She also alleged he had choked her and pointed a gun at her when she threatened to leave home. The court issued a protection order directing Sabinash to have no contact with Mary and to turn over several of Mary's farm animals, including a horse.

[¶ 3] On April 19, 1996, Deputy Sheriff Mike Manley went to Sabinash's farm to serve the protection order. He initially saw Elaine walking on a road near Sabinash's father's farmstead, and briefly talked to her. He then proceeded to the father's farm, where he saw Sabinash in the yard. Without getting out of his patrol car, Manley briefly asked Sabinash about Mary's allegations of a sexual relationship. Manley decided not to serve the protection order at that time because he was waiting for another deputy and a local farmer with a horse trailer to assist in picking up Mary's animals.

[¶ 4] After locating the farmer who had agreed to haul the animals, Manley returned and found Sabinash and his father out on the road, where they had just pulled a horse trailer out of the mud. Manley served the protection order and again questioned Sabinash about the sexual relationship with Mary. Sabinash then walked approximately one-eighth of a mile to the farmstead.

[¶ 5] Deputy Ghentz had arrived to assist, and Manley and Ghentz briefly questioned Elaine in the yard of the farmstead. They then asked Sabinash if he would give a taped statement. Sabinash agreed, and Ghentz read Sabinash the Miranda warnings. In the taped statement, which was consistent with his earlier statements, Sabinash admitted having sex with Mary but asserted it had started when she was 13 years old and that it "was her idea."

[¶ 6] Sabinash was charged with gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(1)(d). He moved to suppress all statements he made to Manley and Ghentz. The trial court ordered all statements made prior to the Miranda warning suppressed, but ruled the post-Miranda taped statement was admissible. Sabinash entered a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2). Judgment of conviction was entered and Sabinash appealed.

[¶ 7] Sabinash asserts the trial court erred in failing to suppress the taped statement he gave to Manley and Ghentz. Relying upon

*Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), Sabinash argues the taped statement was tainted by the illegality of his two prior statements and thus must be excluded as "fruit of the poisonous tree." The State argues the court erred in holding the first two statements were inadmissible, and thus there is no "taint" of the third statement.

[¶ 8] We enunciated our standard of review of a court's disposition of a suppression motion in *State v. Bjornson,* 531 N.W.2d 315, 317 (N.D.1995):

> The trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. *State v. Zimmerman,* 529 N.W.2d 171 (N.D.1995); *City of Fargo v. Thompson,* 520 N.W.2d 578 (N.D.1994). That standard of review recognizes the importance of the trial court's opportunity to observe the witnesses and assess their credibility, and we "accord great deference to its decision in suppression matters." *State v. Brown,* 509 N.W.2d 69, 71 (N.D. 1993).

[¶ 9] Our review in this matter is significantly hampered by the trial court's failure in its written suppression order to delineate the legal basis for its ruling or to make findings of fact. The suppression order is wholly conclusory, stating only

> the Motion to Suppress is granted as to all statements made by the Defendant prior to his being read his Miranda rights. Said motion is denied as to all statements made by Defendant after he was read his Miranda rights.

At the hearing on the motion, the court did provide some insight into its reasoning, stating the first two statements were not given in a "custodial situation" and there was no "coercion," but "I don't see voluntariness those first two situations."

[¶ 10] Voluntariness challenges to statements given to law enforcement officers may be based upon due process grounds or upon self-incrimination grounds. *State v. Murray,* 510 N.W.2d 107, 110 (N.D.1994).

Sabinash asserts both grounds in arguing his first two statements were involuntary.

[¶ 11] When a confession is challenged on due process grounds, the ultimate inquiry is whether the confession was voluntary. *Bjornson,* 531 N.W.2d at 318. A confession is voluntary if it is the product of the defendant's free choice, rather than the product of coercion. *State v. Winkler,* 552 N.W.2d 347, 356 (N.D.1996); *Bjornson,* 531 N.W.2d at 318. Coercion, in and of itself, does not invalidate a confession. *Murray,* 510 N.W.2d at 111. A confession is the product of coercion only if the defendant's will is overborne at the time the confession is given. *Winkler,* 552 N.W.2d at 356; *Bjornson,* 531 N.W.2d at 318.

[¶ 12] We examine the totality of the circumstances to determine voluntariness:

> The voluntariness of a confession is found using the totality-of-the-circumstances test. [*State v.*] *Taillon* [, 470 N.W.2d 226 (N.D.1991) ]. "The inquiry focuses on two elements: (1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained. No one factor is determinative." *Taillon* (citations omitted). The first element, the characteristics and condition of the accused, includes the age, sex, race, education level, physical or mental condition, and prior experience with police. *State v. Pickar,* 453 N.W.2d 783, 785 (N.D. 1990)....
>
> The second element of voluntariness includes the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control. *Taillon* at 229.

*State v. Lefthand,* 523 N.W.2d 63, 68 (N.D. 1994).

[¶ 13] The court in this case indicated there was no coercion, but concluded the first two statements were nevertheless involuntary. We find no support in the record for a finding of involuntariness. There was no testimony Sabinash's age, sex, race, education, or physical or mental condition made him susceptible to coercion. Nor is there

evidence the setting in which the confessions occurred was coercive. In short, there is nothing in this record demonstrating Sabinash's will was overborne at the time the statements were obtained.

[¶ 14] Sabinash alternatively asserts the first two statements were properly suppressed on self-incrimination grounds because Manley did not give Miranda warnings before questioning him. It is well settled that Miranda warnings are required only when the accused is in custody or is otherwise deprived of his freedom of action in a significant way. *State v. Conley*, 1998 ND 5, ¶ 10, 574 N.W.2d 569; *Winkler*, 552 N.W.2d at 355. When analyzing whether the accused was in custody, all circumstances surrounding the interrogation must be considered, but the ultimate inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. *State v. Eldred*, 1997 ND 112, ¶ 10, 564 N.W.2d 283. Although we generally defer to a trial court's findings of fact on suppression motions, the question whether a suspect was in custody, and therefore entitled to Miranda warnings, is a mixed question of fact and law which is fully reviewable on appeal. *Id.* at ¶ 10.

[¶ 15] There is no evidence in this record indicating Sabinash was at any time in custody while being questioned by Manley and Ghentz. Sabinash's statements were taken out-of-doors, with no restrictions upon his ability to leave. In the first instance, Manley drove up to Sabinash while he was standing in a farmyard. While Manley stayed in his patrol car, he asked Sabinash, standing outside, about Mary's allegations. In the second instance, Sabinash was standing on a road, loading horses into a trailer. Sabinash went about his work while Manley questioned him, and eventually left and walked back to the farmstead. Because there is no evidence Sabinash was in custody or had his freedom of movement restricted when the first two statements were given, Miranda warnings were not required.

[¶ 16] We conclude the trial court's determination that the first two statements were involuntary is against the manifest weight of the evidence. Accordingly, because the first two statements were not tainted, there is no basis to suppress the third, taped statement as fruit of the poisonous tree. *State v. LaMorie*, 558 N.W.2d 329, 332 (N.D.1996).

[¶ 17] Sabinash asserted at oral argument that, even if the court was wrong in suppressing the first two statements, the State is precluded from challenging the trial court's determination. Sabinash argues the court's ruling suppressing the first two statements became the law of the case because the State failed to appeal the order suppressing the statements.

[¶ 18] For purposes of this case only, we will assume, without deciding, that an order suppressing evidence may become the law of the case if the State fails to file a timely appeal before the defendant enters a conditional plea of guilty. In this case, however, a procedural quirk precluded any opportunity for the State to appeal the suppression order. The hearing on the suppression motion took place on November 8, 1996. At the conclusion of the hearing the court advised the parties he would orally give his "preliminary thoughts" on the matter, but would issue a final order after reading the authorities cited by the parties. On February 13, 1997, before the court issued its suppression order, Sabinash entered his conditional guilty plea. On February 17, 1997, the court issued an order for a presentence evaluation. On February 19, 1997, the court issued its written order ruling on the suppression motion. Because Sabinash had already pleaded guilty when the court issued its order, there was no basis at that point for the State to appeal. Sabinash's guilty plea constituted a conviction of the offense charged. *See, e.g., State v. Sisson*, 1997 ND 158, ¶ 9, 567 N.W.2d 839. The State had fully prevailed and could secure no further relief, so there would have been no basis for an appeal from the suppression order.

[¶ 19] Nor was it necessary for the State to file a cross-appeal from the criminal judgment to preserve its right to challenge the court's decision. When the judgment below is entirely favorable to the appellee, it is unnecessary to file a cross-appeal. *Ward v. Shipp*, 340 N.W.2d 14, 16 n. 1 (N.D.1983). In such a case, the appellee is entitled to attempt to save the judgment by urging any

ground asserted in the trial court. *Olson v. University of North Dakota,* 488 N.W.2d 386, 388 (N.D.1992); *Livingood v. Meece,* 477 N.W.2d 183, 188 (N.D.1991); *Tkach v. American Sportsman, Inc.,* 316 N.W.2d 785, 787 (N.D.1982).

[¶ 20] The result urged by Sabinash would merely compound the court's error on the first two statements by using that erroneous ruling as the basis for the suppression of the third statement. In this context, two wrongs certainly would not make a right. We conclude the State was not precluded from raising the erroneous suppression of the first two statements to meet Sabinash's fruit-of-the-poisonous-tree argument.

[¶ 21] The judgment of conviction is affirmed.

[¶ 22] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.