2013 ND 119

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Nick Jay WEBSTER, Defendant and Appellant.**

**No. 20130021.**

Supreme Court of North Dakota.

July 18, 2013.

James A. Hope, Assistant State's Attorney, Dickinson, ND, for plaintiff and appellee.

Carey A. Goetz, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Nick Webster appeals from a criminal judgment entered after he conditionally pled guilty to burglary, gross sexual imposition, and interfering with a telephone during an emergency call. Because we conclude the district court erred in determining Webster received sufficient *Miranda* warnings and waived his *Miranda* rights, we reverse the judgment and remand to allow Webster to withdraw his conditional guilty plea.

I

[¶ 2] In March 2012, the State charged Webster with burglary, gross sexual imposition, and interfering with a telephone during an emergency call after law enforcement received a call from an 83–year–old woman reporting she had been sexually assaulted in her home. Law enforcement officers responded and found a broken garage window used to gain entry. The victim told the officers she initially tried to call for help, but the intruder took the phone away. During the investigation, the officers noticed a man who appeared to be watching from a landing at a nearby apartment. The officers spoke with the man, Webster, and after he apparently gave some inconsistent answers, they took him to the law enforcement center for questioning.

[¶ 3] At the law enforcement center, Webster was separately questioned by Officers Travis Leintz and Kylan Klauzer. These interrogations took place in two sep-

arate rooms and were video and audio recorded. The rooms contained 8.5 × 11 inch signs that stated in bold red letters: "ANY AND ALL CONVERSATIONS IN THIS ROOM MAY BE RECORDED." These signs were prominently displayed at eye level on the inside and outside of the doors to the approximately 9 × 10 foot interrogation rooms.

[¶ 4] Webster was first interrogated by Officer Leintz. After Officer Leintz's brief interrogation, Webster slept for about an hour. Webster was then moved into another interrogation room, and Officer Klauzer questioned Webster. Afterward, Webster's brother appeared and sought to speak with Webster. Officer Klauzer asked Webster if he wanted to speak with his brother, which Webster did. Officer Klauzer left the interrogation room, and Webster and his brother spoke. Like the previous interrogations, Webster's conversation with his brother was video and audio recorded. Webster was subsequently arrested and charged with burglary, gross sexual imposition, and interfering with a telephone during an emergency call.

[¶ 5] Webster moved to suppress the statements, arguing that he was not given his "full Miranda warning before interrogation."[1] Webster asserted "he was not told he had a right to a court-appointed attorney if he could not afford one, nor was he told that any statement he made could be used as evidence against him." The State opposed the motion, arguing the warning "given by Detective Leintz, combined with the advisement given by Detective Klauzer, combined with [Webster's] previous contact with the justice system constitutes a fully effective equivalent to a full recitation" of the Miranda warnings.

Additionally, the State argued that Webster's statements were voluntary.

[¶ 6] The district court denied Webster's motion to suppress, holding that:

[S]ufficient Miranda warnings were given to the Defendant, in that a) he indicated that he understood his rights, b) that he was aware that he had a right to counsel, c) that whatever he said could be used against him, even though this was not explicitly stated, and d) from the totality of his interaction with Officers Leintz and Klauzer, the Defendant knowingly waived his rights under Miranda.

[T]he Defendant's conversation with his brother was beyond the scope of Miranda in that it did not involve a custodial interrogation. Also, a sign had been posted in the interview room stating that any conversation therein may be recorded.

Webster appeals.

## II

[¶ 7] This Court will reverse a district court's decision on a motion to suppress "only if, after resolving any conflicts in the testimony in favor of affirmance, there is insufficient competent evidence fairly capable of supporting the trial court's determination and the decision is not contrary to the manifest weight of the evidence." State v. Johnson, 531 N.W.2d 275, 279 (N.D.1995). "The adequacy of Miranda warnings involves a question of fact for the trial court to resolve, based on the circumstances of each case." Id. This Court "consider[s] the totality of the circumstances to determine whether or not a [Miranda] waiver is made voluntarily, knowingly, and intelligently." State v.

---

1. Webster's counsel stated at oral argument she is not challenging the admissibility of Webster's statement to his brother; accord- ingly, our opinion focuses solely on Webster's statements to Officers Leintz and Klauzer.

*Carlson,* 318 N.W.2d 308, 311 (N.D.1982) (citation omitted).

## III

■ [¶ 8] Webster argues his statements to the officers must be suppressed because he was not given proper *Miranda* warnings. The State acknowledges that "neither Mr. Leintz nor Mr. Klauzer told Mr. Webster that anything he said could or would be used against him in a Court of law," and Webster was "not told by either Leintz or Klauzer that an attorney would be appointed for him if he could not afford one."

### A

■ [¶ 9] "The Fifth Amendment of our United States Constitution, as well as Sec. 12, Article I of our North Dakota Constitution, provides that no 'person ... shall be compelled in any criminal case to be a witness against himself.'" *State v. Newnam,* 409 N.W.2d 79, 82 (N.D.1987) (citation omitted). In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that a person subjected to custodial interrogation is entitled to four specific warnings to "secure the privilege against self-incrimination." *Newnam,* at 82. Specifically, the Supreme Court in *Miranda* held:

> [1] He must be warned prior to any questioning that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda,* at 479, 86 S.Ct. 1602. "[C]ustodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Huether,* 2010 ND 233, ¶ 14, 790 N.W.2d 901 (quoting *Miranda,* at 444, 86 S.Ct. 1602). The State does not dispute that Webster was in custody or that his statements to the officers were the result of interrogation.

■ [¶ 10] In determining the adequacy of a defendant's *Miranda* warnings, "[t]he ultimate question is: Did [Defendant] receive a clear and understandable warning of his rights." *Johnson,* 531 N.W.2d at 279 (citation and quotation omitted). Law enforcement officers need not advise a defendant of his *Miranda* rights with the precise language set forth in *Miranda. California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). "These specific [*Miranda* ] warnings, however, do not constitute a ritualistic formula to be administered inflexibly." *State v. Walden,* 336 N.W.2d 629, 631 (N.D.1983) (citation omitted). "Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*'" *Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) (quoting *Prysock,* at 361, 101 S.Ct. 2806). However, at minimum, a "fully effective equivalent" must be given. *Miranda,* 384 U.S. at 476, 86 S.Ct. 1602.

[¶ 11] In *United States v. Street,* officers arrested Street, a veteran law enforcement officer, for a series of armed bank robberies. 472 F.3d 1298, 1302 (11th Cir.2006). After speaking with law enforcement officers, Street moved to suppress his initial statements, arguing he did not receive proper *Miranda* warnings. *Id.* at 1304. The court denied his motion, and a jury subsequently found him guilty on all charges. *Id.* Street appealed, arguing,

among other items, that his initial statement should be suppressed because the *Mirandizing* officer only "told him he has a right to remain silent and he has a right to have a lawyer present...." *Id.* at 1311.

[¶ 12] The Eleventh Circuit held that the trial court erred by not suppressing the statements, noting that the *Miranda* warning to Street "was only halfway adequate. It omitted the advice that anything Street said could be used against him in a court of law and that if he could not afford an attorney one would be appointed for him." *Street,* 472 F.3d at 1311. The *Street* court noted that *Miranda* does not require a verbatim recital of the words of the *Miranda* opinion, but requires words with substance that fully convey the rights as required by *Miranda. Id.* at 1311. The court, quoting *Miranda,* said:

> The problem in the case before us now is not one of form or phrasing, but of substance and omission. Street was not told that anything he said could be used against him in court, advice which "is needed in order to make [the suspect] aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege." Nor was Street advised that if he could not afford an attorney, one would be appointed for him, specific advice which is needed to convey that "[t]he financial ability of the individual has no relationship to the scope of the rights involved here," and that "[t]he privilege against self-incrimination secured by the Constitution applies to all individuals ... indigent as well as the affluent."

*Id.* at 1312 (quoting *Miranda,* 384 U.S. at 469, 472, 86 S.Ct. 1602) (internal citations omitted). *See also Commonwealth v. Dagraca,* 447 Mass. 546, 854 N.E.2d 1249, 1254

(2006) (suppressing statement because inadequate *Miranda* warnings failed to tell defendant that "any statement the defendant made could be used against him"); 2 Wayne R. LaFave *Criminal Procedure* § 6.8(a), at 795 n. 7 (3d ed.2007) (noting that failure to tell a defendant that his statements may be used against him renders "the warnings ... deficient"). Like Street, Webster was not told his statements could be used against him in a court of law, as required by *Miranda v. Arizona.*

[¶ 13] The State concedes that the "trial court did not explicitly address how [Webster] knew that anything he said could be used against him." The State argues that even if Webster was not given his full *Miranda* warnings, Webster's previous experience with the criminal justice system provides him with sufficient knowledge of his rights. We disagree. The defendant in *Street* was a law enforcement officer with twenty-two years of experience, yet the court noted *Miranda* explicitly foreclosed this "previous experience" argument:

> The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that

the individual knows he is free to exercise the privilege at that point in time. *Street*, 472 F.3d at 1310 (quoting *Miranda*, 384 U.S. at 468–69, 86 S.Ct. 1602). *See also United States v. Longbehn*, 850 F.2d 450, 453 (8th Cir.1988) (rejecting an argument that the suspect's position as a police officer obviates the requirement of *Miranda* warnings).

[¶ 14] Because the officers failed to inform Webster that his statements may be used as evidence against him in a court of law, the district court erred in denying Webster's motion to suppress his statements made during interrogation.

B

[¶ 15] Webster also argues that his *Miranda* warnings were deficient because they were "entirely devoid of any advisement of his right to court-appointed counsel if he could not afford private counsel. . . ." The State concedes that Webster was "not told by either Leintz or Klauzer that an attorney would be appointed for him if he could not afford one."

[¶ 16] The State argues that *State v. Walden* excuses the failure to inform a non-indigent defendant that an attorney will be provided if he cannot afford one. 336 N.W.2d at 632. In *Walden*, an officer arrested Walden and attempted to read Walden his *Miranda* rights, but Walden cut him off and said, "I know my rights. You don't have to go any further." *Id.* This Court noted that when an officer "has made a reasonable effort to inform the defendant of his rights in accordance with the dictates of *Miranda* and the defendant has refused to listen, the defendant has waived his right to be informed." *Id.* (citations omitted). Webster did not interrupt Officers Leintz and Klauzer during their partial *Miranda* warnings.

[¶ 17] This Court further noted that the failure to "advise Walden of his right to a court-appointed attorney," if even an error, was harmless because "there is nothing in the record to indicate that he was in fact indigent, [and] failure to give this defendant his full *Miranda* rights did not prejudice him." *Walden*, 336 N.W.2d at 632.

[¶ 18] We have previously concluded the district court erred by not suppressing Webster's statements to Officers Leintz and Klauzer based on their failure to inform Webster that his statements may be used against him in a court of law. Accordingly, it is unnecessary to decide whether the failure to inform Webster that a court-appointed attorney would be provided for him, if he could not afford one, was harmless beyond a reasonable doubt under *Walden*. *Walden*, 336 N.W.2d at 632.

IV

[¶ 19] The district court found that "sufficient *Miranda* warnings were given to Mr. Webster," and Webster's "interactions with Officer Leintz and Officer Klauzer indicate[s] . . . a knowing waiver of his [*Miranda* ] rights. . . ." Webster argues the district court erred in finding that he waived his *Miranda* rights. In contrast, the State argues that *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), illustrates that waiver focuses on protecting defendants from police coercion. Because Webster was not coerced by the officers, the State argues, Webster voluntarily waived his rights when he agreed to speak to the officers.

[¶ 20] A defendant's waiver of his *Miranda* rights must be made " 'voluntarily, knowingly and intelligently.' " *Carlson*, 318 N.W.2d at 311 (citation and quotation omitted). "Voluntariness challenges are of two types. They are either based on due process grounds, or on self-

incrimination grounds." *State v. Murray,* 510 N.W.2d 107, 110 (N.D.1994). "When the voluntariness of a confession is attacked on due process grounds, the outcome is determined by considering the totality of the circumstances." *Id.* (citing *Newnam,* 409 N.W.2d at 83). This same standard applies "when determining whether a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights ... under the Fifth Amendment." *Murray,* at 110 (citations omitted).

[¶ 21] A "defendant may waive effectuation" of the rights conveyed in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602). This analysis focuses on two distinct parts:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran,* at 421, 106 S.Ct. 1135 (citation omitted).

[¶ 22] Here, it is clear that Webster was not given proper *Miranda* warnings informing him that, at minimum, his statement may be used against him. The State concedes this point by noting "[t]he trial court did not explicitly address how [Webster] knew that anything he said could be used against him." The State's reliance on

*Colorado v. Connelly* to find Webster waived his *Miranda* rights is misplaced because *Connelly* only dealt with the voluntariness of a confession. *Connelly,* 479 U.S. at 167, 107 S.Ct. 515. In *Connelly,* the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'...." *Id.* Assuming, without deciding, that the State is correct Webster was not coerced by the officers, any possible waiver by Webster was not made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

[¶ 23] The court's finding on waiver was incorrect because Webster received inadequate *Miranda* warnings. Webster's statements to the officers were not unsolicited and spontaneous; rather, they were custodial statements made in response to questioning initiated by the officers designed to elicit an incriminating response. *See State v. Winkler,* 552 N.W.2d 347, 355 (N.D.1996) (citation omitted) (noting that a defendant's volunteered custodial statements "not in response to police interrogation" are not within the scope of *Miranda* ). Once subjected to custodial interrogation, "[i]n order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning. If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights." *Berghuis v. Thompkins,* 560 U.S. 370, 130 S.Ct. 2250, 2264, 176 L.Ed.2d 1098 (2010) (citation omitted).

[¶ 24] As illustrated above, the officers did not give Webster adequate *Miranda* warnings. Consequently, we conclude the district court erred in finding Webster waived his *Miranda* rights.

## V

[¶ 25] Because the officers' *Miranda* warnings failed to properly inform Webster that his statements may be used against him in a court of law, we reverse the judgment and remand to allow Webster to withdraw his conditional guilty plea.

[¶ 26] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.