# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 52

State of North Dakota,                                    Plaintiff and Appellee

v.

Samuel Elliot Hansford,                               Defendant and Appellant

No. 20180179

Appeal from the District Court of Golden Valley County, Southwest Judicial District, the Honorable James D. Gion, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Olivia L. Krebs (argued), Assistant State's Attorney, and Christina M. Wenko, State's Attorney (appeared), Dickinson, ND, for plaintiff and appellee.

Markus A. Powell, Dickinson, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Samuel Hansford appeals from a district court's order denying his motion to suppress following the entry of a criminal judgment after a jury found him guilty of gross sexual imposition.  We affirm, concluding Hansford was not in police custody when he made incriminating statements and his statements were voluntary.


I

[¶2]   In January 2017, Samuel Hansford was arrested and charged with gross sexual imposition.  Prior to his arrest, Hansford was interviewed by a law enforcement agent.

[¶3]   Before trial, Hansford moved to suppress the written and verbal statements from the interview and requested an evidentiary hearing on the motion.  Hansford argued the statements he made to the agent during the interview were coerced in violation of his due process rights.  He also argued he was coerced to rescind his request for legal representation in violation of his *Miranda* rights, and that the interrogation violated his rights under the Fifth Amendment of the United States Constitution and N.D. Const. art. I, § 12.

[¶4]   In August 2017, a suppression hearing was held on the motion.  Hansford and the law enforcement agent who conducted the interview both testified, and the State entered as exhibits:  (1) an audio recording including conversation between the agent and Hansford taken during the drive from Hansford's workplace to the police department; (2) the Voluntary Statement Form ("statement form") Hansford signed stating he was waiving his right to an attorney, acknowledging he wanted to continue speaking with the agent; and (3) a video recording with audio of the interview.

[¶5]   At the suppression hearing, the agent testified his involvement in the case began when he was called to investigate whether 24-year-old Hansford had sexually assaulted a 16-year-old female who was unconscious at the time.  The agent initially

made contact with Hansford by going to Hansford's workplace. The agent testified he told Hansford he wanted to interview him but due to privacy issues he did not want to conduct the interview at Hansford's work place. After the agent suggested the interview take place at the police department, Hansford asked if the agent could give him a ride.

[¶6] The agent testified that before giving Hansford a ride, he explained to Hansford that he was not required to come to the police department and that he was not under arrest. Hansford rode unrestrained in an unmarked vehicle to the police station. During the ride, the agent and Hansford engaged in casual conversation.

[¶7] The agent testified that upon arriving at the police department, he and Hansford went into the interview room which was equipped with audio and visual recording capabilities. The agent testified he read a "soft version" of the *Miranda* warning. When Hansford expressed some confusion, the agent testified he provided Hansford with a card and read him "line for line" each element of the *Miranda* warning. After going through the card together, the agent testified Hansford acknowledged he understood the *Miranda* warning.

[¶8] The agent testified he talked to Hansford about the night of the alleged sexual assault for around 40 minutes, at which point Hansford "apologized and said he felt he needed to have an attorney with him." The agent told Hansford he would give him five or 10 minutes to "think about it" and he left the room. Hansford testified he stayed in the room because he felt he had no choice to leave without a ride or without explicitly being told he could leave.

[¶9] The agent testified when he returned to the room, Hansford wanted to continue to talk about the investigation and the agent reminded him he needed an answer whether Hansford wanted an attorney present or to waive that right. According to the agent, Hansford stated he wanted to speak to the agent without an attorney, and began to fill out the statement form. Midway through filling out the statement form, Hansford paused and again requested to speak with an attorney. The agent brought Hansford a phone book and Hansford began to make calls. The agent testified after

2

Hansford's final attempt to reach an attorney, Hansford said "I'll just speak with you." The agent again stated if Hansford wished to waive his right he needed to do so on the statement form or verbally to the cameras in the room. Hansford did both. Hansford testified he filled out the statement form because he was under the impression he had to in order to leave. The agent testified that after Hansford signed the statement form indicating his waiver of the right to an attorney, he confessed to having sexual intercourse with a 16-year-old female.

[¶10] Following the hearing, the district court denied the motion to suppress, finding Hansford stated he wanted to talk the matter out, and "clearly rescinded his request for legal representation," and that the rescission was not the result of manipulation by the agent. The court also found Hansford knew he was free to leave at any time. Hansford moved for reconsideration and the court denied that motion as well. After a jury verdict found Hansford guilty, the court entered a criminal judgment. Hansford appeals from the court's order denying his motion to suppress.

II

[¶11] Hansford claims his incriminating statements should have been suppressed because they were obtained in violation of rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution, N.D. Const. art. I, § 12, his right to due process, and his rights under *Miranda*.

[¶12] When reviewing a district court's decision on a motion to suppress:

> This Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Knox*, 2016 ND 15, ¶ 6, 873 N.W.2d 664 (quoting *State v. Bauer*, 2015 ND 132, ¶ 4, 863 N.W.2d 534). "Trial courts are in the business of judging credibility of witnesses and weighing evidence[;] [t]his court is in the business of assuring that a

3

decision by the trial court complies with relevant legal principles." *State v. Taillon*, 470 N.W.2d 226, 230 (N.D. 1991).

## III

[¶13] Hansford argues once he requested counsel and the conversation proceeded instead of ceasing, his *Miranda* rights were violated. Hansford argues he clearly invoked his Fifth Amendment rights when he initially requested an attorney. The State argues Hansford was never in custody for purposes of *Miranda*, and alternatively, even if he was, he properly waived his *Miranda* rights. It is undisputed Hansford was informed of his *Miranda* rights both verbally and in writing prior to the start of the interview.

[¶14] We have previously recognized the relationship between the Fifth Amendment of the United States Constitution, N.D. Const. art. I, § 12, and *Miranda* as follows:

> The Fifth Amendment of our United States Constitution, as well as Sec. 12, Article I of our North Dakota Constitution, provides that no "person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, [384 U.S. 436 (1966),] the Supreme Court held that a person subjected to custodial interrogation is entitled to four specific warnings to "secure the privilege against self-incrimination." Specifically, the Supreme Court in *Miranda* held:
>> [1] He must be warned prior to any questioning that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
> Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*State v. Webster*, 2013 ND 119, ¶ 9, 834 N.W.2d 283 (citations and quotations omitted). "A person is 'in custody' if there is a formal arrest or restraint on his freedom of movement to the degree associated with a formal arrest." *Goebel*, 2007 ND 4 , ¶ 13. "Whether a person is in custody is a mixed question of law and fact and is fully reviewable on appeal." *State v. Huether*, 2010 ND 233, ¶ 14, 790 N.W.2d 901

4

(citation omitted). "When evaluating whether a person is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation." *Id.* (citation omitted). Furthermore, "it is well established that if a person asks for an attorney during custodial interrogation, the interrogation must cease until an attorney is present." *Goebel*, at ¶ 14.

[¶15] The State argues Hansford was not "in custody" because a reasonable person would have felt free to leave if (1) the door was closed but unlocked, (2) he was seated closest to the door, and (3) he was told he was free to leave at any time. We have recognized "[t]hat questioning occurred at the police station or in a 'coercive environment' is not by itself a requirement for *Miranda* warnings to be given." *State v. Golden*, 2009 ND 108, ¶ 15, 766 N.W.2d 473 (citation omitted). "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Oregon v. Mathiason*, 97 S.Ct. 711, 714 (1977).

[¶16] Here, the district court found Hansford went unrestrained to the police station, was told he was free to leave at any time, sat closest to the door during the interview, was interviewed in a room with only one law enforcement agent present, did not show any apprehension about being in the agent's company, and told the agent he understood he was free to leave at any time. Given the facts of this case, the court did not err in concluding a reasonable person in Hansford's situation would have understood he was free to leave and therefore his *Miranda* rights were not violated.

IV

[¶17] Hansford argues his right to due process and his Fifth Amendment right against self-incrimination were violated because his statements were not voluntarily made and his *Miranda* waiver was coerced.

[¶18] When reviewing a district court's findings on the voluntariness of a confession, we have said:

5

Voluntariness of a confession depends upon questions of fact to be resolved by the district court. Because the district court is in a superior position to judge credibility and weight, we show great deference to the district court's determination of voluntariness. We will reverse only if the district court's decision is contrary to the manifest weight of the evidence.

*State v. Goebel,* 2007 ND 4, ¶ 17, 725 N.W.2d 578 (citations omitted).

We have recognized voluntariness challenges are based either on due process grounds or on self-incrimination grounds. The due process analysis for voluntariness considers the totality of the circumstances, which is the same standard applicable to determine whether a defendant voluntarily, knowingly, and intelligently waived *Miranda* rights under the Fifth Amendment.

*State v. Brickle-Hicks*, 2018 ND 194, ¶ 11, 916 N.W.2d 781 (citing *State v. Webster*, 2013 ND 119, ¶¶ 20-21, 834 N.W.2d 283). "When a confession is challenged on due process grounds, the ultimate inquiry is whether the confession was voluntary." *Goebel*, 2007 ND 4, ¶ 16 (citation omitted); *see also State v. Murray*, 510 N.W.2d 107, 110 (N.D. 1994) ("When the voluntariness of a confession is attacked on due process grounds, the outcome is determined by considering the totality of the circumstances."). "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." *Taillon*, 470 N.W.2d at 228. In *Goebel*, we said that a confession is voluntary if:

it is a product of the defendant's free choice rather than a product of coercion. To assess voluntariness, we look at the totality of the circumstances. Our inquiry focuses on two elements: (1) the characteristics and conditions of the accused at the time of the confession, including age, sex, race, education level, physical and mental condition, and prior experience with police; and (2) the details of the setting in which the confession was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control.

*Id.* at ¶ 16 (citations omitted). The same standard applies when determining voluntariness of a waiver of rights under the Fifth Amendment. *Webster*, 2013 ND 119, ¶ 20 "A confession is the product of coercion if the defendant's will is

6

overborne at the time the confession is given." *State v. Norrid*, 2000 ND 112, ¶ 18, 611 N.W.2d 866 (citing *State v. Sabinash*, 1998 ND 32, ¶ 11, 574 N.W.2d 827).

A

[¶19] Hansford argues under the first prong of the *Goebel* inquiry—focusing on characteristics and conditions of the accused—that his lack of prior experience with police made him particularly susceptible to coercion. Hansford argues the agent interviewing him took advantage of his inexperience by saying he would tell the judge whether Hansford cooperated with questioning and by misleading Hansford about his ability to have an attorney present.

[¶20] Hansford did not argue his lack of experience with law enforcement to the district court. Arguments not made before the district court will generally not be addressed on appeal. *State v. Gray*, 2017 ND 108, ¶ 13, 893 N.W.2d 484 (quoting *State v. Kieper*, 2008 ND 65, ¶ 16, 747 N.W.2d 497). However, it is the State's burden to prove the voluntariness of a defendant's confession and to produce evidence on relevant factors including prior contacts with police. *State v. Pickar*, 453 N.W.2d 783, 786 (N.D. 1990). At the suppression hearing, the State argued Hansford was given a *Miranda* warning and that he acknowledged he understood. The State argued to the court, "there's been no suggestion or any evidence put forth by the defense that the defendant did not understand or did not have the mental capacity to acknowledge or understand what, in fact, he was doing—what the consequences of the conversation would be." The State submitted an audio file, a video, and the statement form as exhibits at the suppression hearing. The court, relying on those exhibits along with the testimony of Hansford and the agent, found Hansford understood his rights, agreed to talk, and was not coerced.

[¶21] We conclude there is sufficient competent evidence supporting the district court's findings as they pertain to the first *Goebel* factor.

[¶22] Hansford argues under the second prong of the *Goebel* inquiry, focusing on details of the setting of the interview, that it was clear to Hansford from the beginning that he was *not* free to leave. After viewing the video at the suppression hearing, Hansford acknowledged the agent told him the door to the interview room was open and he was free to leave at any time. Hansford then testified he felt he could not leave because he did not have a ride and could not call for one, but did not explain why he felt he was unable to. The district court, on this issue, found:

> Hansford claims [the agent] manipulated Hansford into accepting a ride to the Public Safety Center, and so Hansford was unable to leave as he had no transportation and the weather was inclement. However, Hansford told [the agent] he understood he was free to leave at any time. Hansford did not attempt to leave, nor did he request to leave. Hansford sat closest to the door during the interview and [the agent] was the only law enforcement officer in the room. Hansford related he understood [the agent] was doing his job, and did not show any apprehension about being in [the agent]'s company.

The court's findings are supported by the record.

[¶23] Hansford argues his written *Miranda* waiver and statements were coerced in violation of his due process rights. It is clear and undisputed Hansford received complete *Miranda* warnings, despite his not being in custody. The district court reviewed the record of Hansford's interview and the testimony at the suppression hearing and found Hansford clearly rescinded his request for legal representation and his decision to do so was not coerced by the agent conducting the interview. The district court specifically noted:

> There is no question Hansford received his Miranda advisement, nor that he requested to be represented by legal counsel after the interview began. The issue appears to be whether Hansford rescinded his request for legal representation, and if he did so, was he subtly coerced into doing so by [the agent].
>
> Hansford kept a running commentary about attorneys and the situation he was in while looking through the phone book for an attorney. [The agent] repeatedly stated he was not going to ask Hansford questions but would sit and listen if Hansford wanted to talk. Hansford commented that attorneys take forever, and he could not

afford one. He paged through the phone book and reluctantly attempted to call an attorney. After his third attempt, he proceeded to fill out the waiver and sign it. The Court finds Hansford clearly rescinded his request for legal representation.

Did [the agent] manipulate Hansford into recission? The Court believes he did not. Hansford continued to talk to [the agent] after Hansford requested an attorney, despite [the agent] telling Hansford that [the agent] would not ask any questions. While [the agent] did reference the need to tell the truth, and the fact Hansford's sister received favorable treatment after talking to [the agent], he made it clear to Hansford that he would only listen and not question Hansford. Hansford continued to talk to [the agent], causing uncertainty on [the agent]'s part as to whether Hansford was invoking his right to counsel or was simply talking about the possibility. Hansford was given ample opportunity to contact an attorney.

[¶24] Even if a suspect is not in custody and *Miranda* warnings are given gratuitously, they are not rendered "wholly irrelevant." *Taillon*, 470 N.W.2d at 228; *see also U.S. v. Bautista*, 145 F.3d 1140, 1148 (10th Cir. 1998) ("Although giving a *Miranda* warning does not, in and of itself, convert an otherwise non-custodial interview into a custodial interrogation, it is a factor to be considered by the court."). Instead, "[t]he giving of *Miranda* warnings and the accused's reliance on the rights described in the warnings are *relevant factors* in evaluating the voluntariness of any incriminating statements." *Taillon*, 470 N.W.2d at 229 (emphasis added); *cf. State v. Murray*, 510 N.W.2d 107, 110 (N.D. 1994) (whether a defendant *actually* relies upon or attempts to exercise the rights advised in gratuitous *Miranda* warnings is considered). Consideration of gratuitous *Miranda* warnings thus factors into the second prong—the details of the setting in which the confession was obtained—of the two-prong *Goebel* totality of the circumstances test for voluntariness.

[¶25] Here, the district court considered the impact of the *Miranda* warnings when making findings on the voluntariness of Hansford's statements evidenced by references to the uncertainty surrounding Hansford's possible invocation of his right to counsel. The court noted the ample time afforded Hansford to contact an attorney, Hansford's attempts to reach an attorney, followed by his decision to fill out and sign the statement form. The court noted the agent's reassurances that he would only listen

9

and not question Hansford, and finally it noted the setting of the interview and that Hansford did not show any apprehension about being in the agent's company, that he understood he was free to leave at any time, and that he never requested or attempted to leave.

[¶26]  Although the district court does not explicitly reference its application of the "totality of the circumstances" analysis, its decision clearly incorporates that analysis. *See Bormann v. AT&T Comm, Inc.*, 875 F.2d 399, 403 (2nd Cir. 1989) ("although the district court did not *explicitly* use the 'totality of the circumstances' standard, its 'scrutiny of the circumstances' surrounding the signing of the releases was adequate") (emphasis added).  It is clear from the court's order that no single factor was determinative of the court's decision; rather, a balancing of several distinct factors lead to the court's decision to deny the motion to suppress.

[¶27]  We hold the district court's findings regarding the voluntariness of Hansford's statements are not contrary to the manifest weight of the evidence.  We conclude there is sufficient competent evidence supporting the court's findings and the court's decision is not contrary to the manifest weight of the evidence.

V

[¶28]  Hansford argues his Sixth Amendment rights were violated, citing to the Sixth Amendment of the United States Constitution for the proposition that: "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense."  U.S. Const. amend. VI.  "A criminal defendant's fundamental right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and by N.D. Const. art. I, § 12." *State v. Dvorak*, 2000 ND 6, ¶ 9, 604 N.W.2d 445.  The United States Supreme Court precedent has established that "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings . . . [i]nterrogation by the State is such a stage." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).  The right arises at all times following the time

10

of arraignment: "during perhaps the most critical period of the proceedings . . . that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation (are) vitally important, the defendants . . . (are) as much entitled to such aid (of counsel) during that period as at the trial itself." *Massiah v. U.S*, 377 U.S. 201, 205 (1964). "Our standard of review for an alleged constitutional right is de novo." *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 7, 597 N.W.2d 406.

[¶29]   Other than citing to the Sixth Amendment of the United States Constitution, Hansford provides no analysis of how his rights under the Sixth Amendment have been violated. "[P]arties raising a constitutional claim must provide persuasive authority and a reasoned analysis to support the claim." *State v. Kleppe*, 2011 ND 141, ¶ 10, 800 N.W.2d 311 (citation omitted). We only decide issues that have been thoroughly briefed and argued. *Id*. Because Hansford has not provided adequate support for his Sixth Amendment claim, we decline to address it.


VI

[¶30]   Hansford was not in police custody when he made incriminating statements and the statements were voluntary. The district court did not err in denying Hansford's motion to suppress. Accordingly, we affirm the criminal judgment.

[¶31]   Lisa Fair McEvers
         Jon J. Jensen
         Jerod E. Tufte
         Daniel J. Crothers
         Gerald W. VandeWalle, C.J.